EDITH ADELINE OSBORN, APPELLEE, V. JAY RAYBORN
OSBORN, APPELLANT.

8 N. W. (2d) 444

FILED MARCH 5, 1943. No. 31540.

*Kingsbury & Kingsbury,* for appellant.

*F. B. Hurley* and *John E. Newton, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

In this divorce action the plaintiff was granted an absolute divorce from her husband on the ground of extreme cruelty, and given the custody of a minor son. The custody of an older minor son was granted to the father, who

(1)

was required to pay $50 for plaintiff's attorney fee, the plaintiff having waived alimony and support money.

The defendant appeals to this court on the ground that there was not sufficient evidence to warrant the court in granting a decree of divorce to the plaintiff. Defendant also insists that the court erred in separating the minor sons and in giving custody of Lloyd, aged 11 years, to the mother without making suitable arrangements for exchange or the visitation of either parent to said minors, and that defendant should have the right to visit said minor, Lloyd, at proper and suitable times, and further objects to the decree of divorce on the ground that the plaintiff should be required to keep the minor, Lloyd, within the jurisdiction of the court.

The evidence of the plaintiff discloses that the parties were married on April 20, 1910, in Dixon county, where they have always lived on rented farms. The following five children are the issue of said marriage: Loren R., 29 years of age, who is clerk of a district court in South Dakota; Lena, aged 22 years, and Vera, aged 21 years, who are in California, the older one being married, and both being self-supporting; the only minors are John, aged 14, and Lloyd, aged 11.

Plaintiff testified that, because of her husband's terrible temper, which he did not try to control, and ordering her to leave before he kicked her out, she could not live with him. She gave a number of definite incidents which illustrated the way he would fly into a rage and abuse her. The transcript discloses that the trial in the main case was preceded by a hearing on restraining order and also a hearing and order for temporary alimony and expenses of litigation. Her evidence was supported by that of a hired man, who had worked for them while they lived on three different rented farms and, without citing the details, his evidence is sufficient to support that of the plaintiff as to cruelty.

The plaintiff testified that she got about $2,000 from her father's estate and some from her mother's estate, all of

which had been spent. She testified that she can get good wages in California, as she is able to work, and the daughters write her that there is employment there which she can get.

The plaintiff had left the defendant in 1921, but through the influence of her father and brother they finally went back to living together. The rented farm that they were living on when she left her husband is a 240-acre farm two miles north of town.

In this case an attack is made upon the decree of the court in regard to the custody of the two boys who are minors. The decree set out that the trial occurred on October 1, 1941, and that the trial court, taking the case under advisement, conducted an independent investigation in connection with the custody of the children. The trial court found that both the plaintiff and defendant are suitable persons to have the care and custody of the minors, and that ordinarily said minors should be kept together, but that under all of the circumstances arising in this case (which are not disclosed in the evidence or decree) it is impossible to keep said minors together in the same home without materially interfering with the happiness, desires and welfare of the minors. Therefore, after this investigation, the trial judge on October 31, 1941, entered his decree awarding the care, custody and control of the older son, John, to the father, and of the younger son to the mother.

In the first place, it is the duty of a father to support his offspring, and that duty is as imperative after a divorce as before. *Wassung v. Wassung,* 136 Neb. 440, 286 N. W. 340.

In *State v. Porter,* 78 Neb. 811, 112 N. W. 286, it was held that, while there is a strong presumption that the interests of the child required that it be confided to its father, there are circumstances and conditions under which it is best for a child to remain temporarily with its grandparents, and in *Kaufmann v. Kaufmann,* 140 Neb. 299, 299 N. W. 617, this court recently held that the welfare of the child

was the one question of primary consideration to which all others must yield; that the proposed home, its entire surroundings as to food, clothing, and discipline, as well as the religious care and upbringing of the child, should be considered, and that home will be selected which at any particular time has the better advantages for best fitting the child for its place in the world. See *Nathan v. Nathan,* 102 Neb. 59, 165 N. W. 955.

In the case of *York v. York,* 138 Neb. 224, 292 N. W. 385, where the divorced parents would be living 150 miles apart, it was provided that during the summer vacation the child might live with and visit his father, for it is important that punctual attendance at school during the school year be not interfered with. Further discussion of such visits may be found in *Hobza v. Hobza,* 128 Neb. 598, 259 N. W. 516.

There is testimony at the trial that the mother was planning to go to California to find work, but she may now have other plans; however, that phase of the litigation might well be given a careful examination, for the reason that the father would be entitled to visit his younger son at proper times, as the mother would be entitled to see the older son when desirable.

In the case of *Crandall v. Luhnow,* 137 Neb. 13, 288 N. W. 29, it is said that it is usually best for the court to keep minor children in a divorce case within the jurisdiction of the court, for it is impossible to anticipate at the time of the trial changes which may occur in the habits, character, fitness, or financial condition of either parent.

It is not disclosed in the record just what investigation the trial judge made as to the care and custody of these two minors. Doubtless he consulted privately with both boys as to their wishes in the matter. The oldest minor being above 14 years of age and having preferred to go with his father, his wishes would be acceded to by the court if the father had a proper place in which to care for him and time, opportunity, and inclination to guide the son in his education, and the same questions were doubtless care-

fully considered by the court in awarding the custody of the younger son to the mother.

Without a formal statement in the decree in reference thereto, the parties may have agreed, as they did about the division of their personal property, as to when each boy can visit the other parent. All parties and their counsel are aware of the continuing power and authority of the district court to correct anything which interferes with the best interests of either of these boys.

There appears on the face of the record some merit to the contention that the mother was planning at one time to remove from Nebraska and take the younger son with her. In this connection, this court does not find sufficient facts in the record upon which to base an order modifying the decree in relation thereto, or in regard to the custody of the minors, but the counsel for either party may, by a proper application, bring those questions before the trial court for prompt determination.

The decree of the trial court is affirmed, with an allowance of attorneys' fees to plaintiff's attorneys in the sum of $100.

AFFIRMED.