JOHN ELIKER, APPELLANT, v. EVELYN ELIKER, APPELLEE.

295 N. W. 2d 268

Filed July 22, 1980. Nos. 42932, 43021.

Roger C. Lott, for appellant.

Ron Lahners, Lancaster County Attorney, and Thomas S. Jaudzemis, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.

The appellant herein, John Eliker, appeals from two separate final orders entered in the same case by the District Court for Lancaster County, Nebraska. Both orders have been consolidated for purposes of appeal. The first order, entered in case No. 42932, resulted from a finding by the District Court that Mr. Eliker had wilfully and contumaciously disregarded a previous judgment of the District Court for Lancaster County, Nebraska, requiring him to make child support payments for his then minor child. As a result of the finding, the trial court ordered Mr. Eliker confined to jail for a period of 90 days, subject, however, to his right to purge himself of such contempt by paying the delinquent child support within 30 days from the date of the order.

In the second case appealed, No. 43021, the trial court ordered and directed Mr. Eliker's employer to withhold and transmit certain earnings of Mr. Eliker to the clerk of the District Court for Lancaster County, Nebraska, to be applied upon payment of the delinquent child support payments. We have reviewed the records in both cases and conclude the orders are, in all respects, correct. The orders in both cases are, therefore, affirmed.

The marriage of Mr. Eliker and his former wife, Evelyn Eliker, was dissolved by decree entered by the District Court for Lancaster County, Nebraska, on March 6, 1969. By the decree, Mrs. Eliker was granted custody of the minor child of the parties and Mr. Eliker was ordered to pay child support in the amount of $50 per month, beginning March 6, 1969. At the time of the entry of the decree, the minor child of the parties was not quite 13 years of age and

obtained her majority on April 20, 1975.

The records in the office of the clerk of the District Court for Lancaster County, Nebraska, disclose that Mr. Eliker made only one of the required child support payments and was, on April 20, 1975, some $3,800 delinquent in child support payments.

On August 1, 1978, the District Court for Lancaster County, Nebraska, pursuant to Neb. Rev. Stat. § 42-358(2) (Reissue 1978), appointed the county attorney of Lancaster County, Nebraska, to commence contempt proceedings against Mr. Eliker for his failure to pay the required child support. On October 25, 1978, a hearing was had before the Honorable Samuel Van Pelt, one of the judges in and for the 3rd judicial district, and on November 16, 1978, Judge Van Pelt entered an order finding that the evidence was not sufficient to establish Mr. Eliker's wilful failure to comply with prior court orders. Accordingly, the contempt proceeding was dismissed.

Thereafter, on March 8, 1979, the Honorable Dale Fahrnbruch, another of the district judges for the 3rd judicial district, acting pursuant to the provisions of § 42-358(2), again entered an order to show cause why Mr. Eliker should not be held in contempt of court for his failure to make child support payments as previously ordered by the court. The record reflects that between the date of November 16, 1978, when the previous contempt proceeding was dismissed, and March 8, 1979, when the subsequent proceeding was filed, Mr. Eliker made no further payments.

In response to the order to show cause entered by Judge Fahrnbruch, Mr. Eliker filed a response. He maintained that Mrs. Eliker should be estopped from enforcing the collection of the delinquent child support payments because of her refusal, during the time that the child was a minor, to permit Mr. Eliker to see the child. Mr. Eliker further maintained that Mrs. Eliker should be denied relief be-

cause of her failure to ever seek collection of the delinquent payments.

Hearing was held on March 26, 1979, before the Honorable Dale Fahrnbruch. Thereafter, the court determined from the evidence that Mr. Eliker had sufficient income to pay the delinquent child support payments and owned a home, free and clear of any liens. Accordingly, the court found that as of March 26, 1979, Mr. Eliker was in contempt of court and thereafter, on July 23, 1979, ordered Mr. Eliker to be confined to jail for a period of 90 days, provided, however, that Mr. Eliker could purge himself of contempt by paying by August 23, 1979, all of the child support payments due.

The second order resulted from an action instituted by the Lancaster County attorney's office pursuant to the provisions of Neb. Rev. Stat. § 42-364.01 (Reissue 1978). Following hearing, the District Court entered an order directing Mr. Eliker's employer to pay into court, out of Mr. Eliker's wages, the sum of $75 each pay period to be applied on the delinquent child support.

We shall first consider the assignments of error raised by Mr. Eliker in case No. 42932. Mr. Eliker maintains that the trial court erred in finding that a contempt proceeding brought pursuant to Neb. Rev. Stat. § 42-358 (Reissue 1978) is civil in nature rather than criminal. Moreover, Mr. Eliker maintains that because the proceeding is a criminal action and not a civil action, it must be prosecuted in the name of the State and is subject to the 3-year statute of limitations provided by Neb. Rev. Stat. § 29-110 (Reissue 1979).

Furthermore, Mr. Eliker maintains that the trial court erred in failing to find that the former hearing, held on October 25, 1978, before Judge Van Pelt, constituted res judicata as to any subsequent proceedings seeking to find Mr. Eliker in contempt of court and, further, as a criminal matter, the present hear-

ing constituted double jeopardy. And, finally, Mr. Eliker maintains that he should not have been held in contempt of court because Mrs. Eliker is precluded from collecting the unpaid child support, under the doctrines of both equitable estoppel and laches.

We turn, then, first to the question of whether a proceeding brought under the provisions of § 42-358 involves a civil contempt proceeding or a criminal contempt proceeding.

To be sure, the question of determining whether or not a contempt action is civil or criminal in nature has caused some difficulty, not only for this court, but for other courts as well. That is due, in part, to the fact that the proceedings are not, in the traditional sense, either criminal or civil. A proceeding for contempt is sui generis and summary in its nature. It partakes of some of the elements of both civil and criminal proceedings, but strictly speaking, it is neither. It belongs to a class of proceedings inherent in the court and deemed essential to its existence. *State, ex rel. Beck v. Lush,* 168 Neb. 367, 95 N.W.2d 695 (1959).

In our earlier decision of *Maryott v. State,* 124 Neb. 274, 246 N.W. 343 (1933), we did, indeed, attempt to clarify the situation. The language of the *Maryott* decision is worthy of repeating in detail here. In *Maryott, supra* at 276-77, 246 N.W. at 344, we said:

From a careful reading of these and many other cases, involving the question of contempt, it is apparent that much confusion and lack of harmony exist, not only in the decisions of this court, but of other courts. Much of this confusion is due to the failure to observe the distinctions in the several classes of contempt. Generally speaking, contempts are either direct, those committed in the presence of the court while in session,

or constructive, consisting of those not committed in the presence of the court. Properly speaking, constructive contempts should be divided into two classes — criminal and civil. Those contempts which are prosecuted to preserve the power and vindicate the dignity of the court and to punish for disobedience of its orders are, ordinarily, termed criminal contempts, while those instituted to preserve and enforce the rights of private parties to the suit and to compel obedience to orders and decrees made to enforce the rights and to administer the remedies to which the court has found them to be entitled are, ordinarily, civil contempts. . . .

Where a party to an action fails to obey an order of the court, made for the benefit of the opposing party, the rule is well recognized that such act is, ordinarily, a mere civil contempt, and the rules applicable to a criminal contempt are not applicable. Where a civil contempt is charged, it may be by an affidavit by the party to the action who is injuriously affected. Procedure may be in the original action and need not be by information in the name of the state.

Similarly, see, *Bahm v. Raikes,* 200 Neb. 195, 263 N.W.2d 437 (1978); *State, ex rel. Wright, v. Barlow,* 132 Neb. 166, 271 N.W. 282 (1937).

In 17 C.J.S. *Contempt* § 62(6) (1963), the author notes:

Civil contempt proceedings are generally held to be remedial and civil in their nature; that is, they are proceedings for the enforcement of some duty, and essentially a remedy for coercing a person to do the thing required. As otherwise expressed a proceed-

ing for civil contempt is one instituted to preserve and enforce the rights of a private party to an action and to compel obedience to a judgment or decree intended to benefit such a party litigant. So a proceeding is one for civil contempt, regardless of its form, if the act charged is wholly the disobedience, by one party to a suit, of a special order made in behalf of the other party, and the disobeyed order may still be obeyed, and the purpose of the punishment is to aid in an enforcement of obedience.

It appears clear beyond question that the purpose of §§ 42-358 et seq. is solely that of coercing payment by a party in a domestic relations matter who has failed to pay previously ordered child support. We, therefore, now hold that proceedings brought pursuant to the provisions of § 42-358 et seq. are civil in nature and are to be filed and heard in accordance with rules applicable to civil contempt proceedings. Accordingly then, having found this proceeding to be civil in nature, Mr. Eliker's arguments concerning the form of the action and the applicability of § 29-110 are easily disposed of. None of the claims have any application in this matter.

Likewise, because the proceedings involved herein are civil in nature and not criminal, the claim concerning double jeopardy has no application. See, *Breed v. Jones* 421 U.S. 519 (1975); Neb. Const. art. I, § 12.

Furthermore, the fact that the trial court earlier found that Mr. Eliker was not wilfully in contempt of court as of a date certain, does not preclude the same trial court from finding Mr. Eliker subsequently in contempt of court. As we noted in the *Maryott* case, one may subsequently become wilfully in contempt of court though previously found not in contempt of court. In *Maryott, supra* at 280, 246 N.W. at 345, we said:

The judgment of the district court is reversed, and the defendant discharged from the judgment for contempt. However, this is without prejudice to the right to institute other proceedings, or another proceeding for contempt, if the defendant becomes of sufficient ability to pay, and wilfully and contumaciously refuses to comply with the order made with respect to alimony.

The trial court could reasonably have concluded that, by reason of the first hearing, Mr. Eliker's attention was directed to the requirement that he was still obligated to make payment and his failure to do so thereafter did display a wilful and contumacious disregard for the previous order of the court. Where an individual is under order of a court to perform a continuing obligation, the fact that a court may, at one point in time, find the individual's failure to perform such act not wilfully contumacious, does not preclude the court from later finding such continued disregard of the order as evidence of a subsequent wilful and contumacious act sufficient to constitute contempt of court. There is no merit to Mr. Eliker's claim of res judicata.

We turn then to Mr. Eliker's last claim in case No. 42932. Mr. Eliker maintains that Mrs. Eliker should be precluded from seeking to collect unpaid child support, under either the doctrine of equitable estoppel or laches.

Recently, in the case of *Williams v. Williams, ante* p. 630, 294 N.W.2d 357 (1980), we had occasion to examine in detail the doctrine of equitable estoppel and its proper application in a domestic relations matter. We specifically set out in the *Williams* case the basis upon which a court might find the doctrine of equitable estoppel applicable. None of the facts in this case, however, are in any way relevant to that doctrine. This jurisdiction is committed to the view that courts of this state are

without authority to forgive accrued child support and that such payments continue to accrue in accordance with the court's previous order until paid in full or otherwise modified by the court. See, *Smith v. Smith,* 201 Neb. 21, 265 N.W.2d 855 (1978); *Ruehle v. Ruehle,* 169 Neb. 23, 97 N.W.2d 868 (1959). The fact that a mother in whose custody a minor child has been placed by the court refuses to permit a father ordered to pay child support to exercise his rights of visitation does not justify the father's withholding the payment of child support. The father is not without remedy and may make application to the court for further orders requiring the mother to permit the father to exercise his right of visitation. The right of visitation, however, is not a quid pro quo for the payment of child support and the mother's action does not justify the father's failure to pay.

In 17 Am. Jur. 2d *Contempt* § 40 (1964), it is noted:

Where a divorced husband neglects to apply for a modification of the divorce decree, in spite of the fact that sufficient grounds exist to warrant modification, the mere existence of such grounds with respect to payments due under the decree is not available as a defense to proceedings for contempt for violating the decree.

The fact that Mrs. Eliker may have improperly and without justification prevented Mr. Eliker from exercising visitation rights with his daughter, did not either entitle or justify Mr. Eliker's failing to continue making child support payments as required. Neither of the parties is authorized to interfere with the court's orders and only the court can determine what, if any, adjustments should be made. The disposition of minor children and provision for their support, in an action where a divorce is granted, is not controllable by agreement of the parties, but by the court on the facts and circumstances

as disclosed to it. When a court orders the payment of child support, it means to have such order followed. We cannot be more emphatic in that regard. *Jafari v. Jafari,* 204 Neb. 622, 284 N.W.2d 554 (1979); *Koser v. Koser,* 148 Neb. 277, 27 N.W.2d 162 (1947). Mrs. Eliker's refusal to permit Mr. Eliker to visit with his child did not create grounds upon which the doctrine of equitable estoppel could be applied and the trial court was correct in refusing to permit testimony of those facts in connection with an action brought pursuant to the provisions of § 42-358.

Likewise, in the case of *Smith v. Smith, supra,* we specifically found that the defense of laches was not available in such cases, saying:

> "The defense of laches prevails only when it has become inequitable to enforce the claimant's right, and it is not available to one who has caused or contributed to the cause of delay or to one who has had it within his power to terminate the action." Finnern v. Bruner, 167 Neb. 281, 92 N. W. 2d 785 (1958).

*Id.* at 26. Without question, Mr. Eliker caused or contributed to his current problem and had it within his power to avoid the present burden of making a large lump sum payment by either making the payments as ordered or by filing a motion with the trial court seeking release of the order requiring him to make payment of child support.

Likewise, in *Mazanec v. Lincoln Bonding & Ins. Co.,* 169 Neb. 629, 645, 100 N.W.2d 881, 891 (1960), in discussing the concept of laches, we said:

> "The question whether laches exists in a particular case depends upon its own peculiar circumstances and is addressed to the sound discretion of the court, the question of the unreasonableness of the delay depending largely upon the nature of the property in the particular case." [*Russo v. Williams,*

160 Neb. 564, 582-83, 71 N.W.2d 131, 144 (1955).]

Under all of the circumstances, we do not see how the defense of laches could have any application herein and, again, the trial court did not abuse its discretion in holding the defense inapplicable. The defenses of equitable estoppel and laches being unavailable to Mr. Eliker, testimony concerning those matters, likewise, was inadmissible. Under the general rules of evidence, either civil or criminal, any relevant and material evidence, otherwise competent, is admissible and evidence which is not competent, relevant, and material should be excluded. See 17 C.J.S. *Contempt* § 84(3).

Having thus disposed of all of the assignments of error raised in case No. 42932 and finding the trial court's actions to be without error, we turn to case No. 43021, wherein Mr. Eliker maintains that the trial court erred in failing to compel the county attorney to answer certain requests for admissions served upon the county attorney. The action in case No. 43021 was an action brought pursuant to the provisions of § 42-364.01 to require Mr. Eliker's employer to withhold a certain part of Mr. Eliker's wages and pay it over to the clerk of the District Court. During the proceedings, Mr. Eliker served requests for admissions upon Mrs. Eliker and her attorney, a member of the county attorney's staff. The request for admissions went to the issues of Mrs. Eliker's refusing to permit Mr. Eliker to see the minor child of the parties and the fact that Mrs. Eliker had never previously sought to enforce the delinquent child support payments. The deputy county attorney filed objections to the request for admissions, alleging several grounds, including the fact that the requests were irrelevant to the issue. For reasons which we have already set out, indeed, the requests for admissions were irrelevant, not only to the proceedings under § 42-358, but to the action

brought pursuant to § 42-364.01 as well. Neb. Rev. Stat. § 25-1267.41 (Reissue 1979) specifically permits one upon whom a request for admissions has been served to object to such request for admissions on the grounds that some or all of the requested admissions are irrelevant. The trial court, concluding that the requested admissions were, in fact, irrelevant, was authorized to sustain the objections and relieve Mrs. Eliker's counsel of the requirement of answering the requests for admissions. The trial court was correct in so doing and no error was committed.

Having, therefore, found that there was no error in either case, the judgments of both cases are affirmed.

AFFIRMED.

BOSLAUGH, J., concurs in result.