DOUGLAS A. CLARK, APPELLEE, v. RITA V. CLARK, ALSO KNOWN AS RITA V. OFFUTT, APPELLANT.

422 N.W.2d 793

Filed May 6, 1988.   No. 87-655.

Robert J. Hovey, P.C., of Robinson, Hovey, P.C., & Kenney, for appellant.

Donald A. Roberts of Lustgarten & Roberts, P.C., for appellee.

HASTINGS, C.J., WHITE, and FAHRNBRUCH, JJ., and WOLF and McGINN, D. JJ.

HASTINGS, C.J.

The respondent mother has appealed from the order of the district court changing possession of the parties' minor children to the petitioner father and denying the mother's claim for additional child support. We affirm.

The parties were divorced in March 1983. Custody of the couple's two boys, Michael Clark (date of birth August 20, 1976) and Jonathan Clark (date of birth October 23, 1979), was given to the mother. The father was awarded the family residence, with possession to remain with the mother pursuant to a lease agreement between the parties. In addition, the mother was given a $5,000 lien in the property for her share of the equity. The father was ordered to pay $400 per month for child support.

In June 1985, the mother asked the court for permission to remove her children from the jurisdiction, as her new husband was being stationed at Eielson Air Force Base, Alaska. The father contested this, but the court granted the mother's request. After a hearing, the court placed custody of the

children in the court, with possession in the mother. As to visitation, the court ordered that the father would have the boys for 2 months in the summer and that the transportation expenses for this visit would be borne by the father. The court also ordered that the Christmas vacation would be divided equally between the parties. The transportation expenses for the Christmas visitations were to be paid by the mother. The court also found that the mother had breached the lease agreement and that her lien would thereby be reduced by $1,441.75.

When the time came for the father to make arrangements for the Christmas 1985 visitation, the mother told him that she could not afford to send the boys to Nebraska. As a result, the father financed the trip, and the amount of the mother's lien in the house was reduced by the amount that the father spent for the transportation expenses. As scheduled, the boys came to Nebraska for 60 days in the summer, at the father's expense.

For the Christmas 1986 visit, the father once again ran into problems. The younger son has juvenile diabetes of such severity that he cannot travel without adult supervision. The mother gave birth to a daughter on December 10, 1986, and was instructed by her doctor not to travel for 4 weeks after the birth. Therefore, she was unable to accompany the boys to Nebraska, as was necessary. Additionally, the mother felt that she could not afford to send the children to Nebraska, although this does not appear to have been a major consideration. The mother did offer to fly the father to Alaska for Christmas, but he declined, as he did not want to spend Christmas with his boys in a motel room in Alaska. Consequently, the father did not exercise his Christmas 1986 visitation.

The court order had also instructed the mother to aid the children in regular written correspondence with their father. According to the father, the children did not often communicate with him. The mother testified that the boys and she had been so busy with scouting, piano lessons, etc., that "we just haven't had the time to write the letters to their dad."

In January 1987, the father petitioned the court to modify the decree as to custody of the children, based upon the mother's alleged lack of compliance with the visitation and

communication requirements. The mother denied that a change of circumstances warranting a change of custody had taken place and cross-petitioned for an additional $200 per month child support.

The matter was heard June 10, 1987. On June 30, the court found that there had been no substantial change in circumstances which would warrant an increase in child support. Moreover, the court found that the mother's "inability and refusal" to comply with the court-ordered visitation was a change of circumstances sufficient to warrant a change of possession of the children from the mother to the father.

Since the issue of whether to award the mother additional child support becomes moot if she no longer has possession of the children, it is first necessary to determine whether the court erred in changing possession of the children to the father.

In the past we have held that an order concerning custody of the children will not be modified unless there has been a material change of circumstances indicating that the person with custody of the children is unfit *or* that the best interests of the children require such action. *Hicks v. Hicks*, 223 Neb. 189, 388 N.W.2d 510 (1986); *Hoschar v. Hoschar*, 220 Neb. 913, 374 N.W.2d 64 (1985). There is no indication in the present case that either parent was unfit to care for the boys. Therefore, under the *Hicks* rule, the issue would be whether there has been a material change of circumstances. The trial court found that there was; however, that rule has been modified.

In *Christen v. Christen, ante* p. 268, 271, 422 N.W.2d 92, 95 (1988), we said:

> However, when a court has retained legal custody of a child in a dissolution proceeding, requiring a change of circumstances to alter physical custody of a child would impair the court's swift action which may be necessary in the best interests of the child. Therefore, we hold that, when a court has retained legal custody of a child, pursuant to § 42-364, a question whether to change physical custody is determined by the best interests of the child without the necessity of showing any change of circumstances otherwise required for a change in legal custody of the child.

The mother was unable or had refused to comply with the visitation and correspondence requirements of the order. If the trial court had been aware that the mother could not (or would not) comply with visitation, in the best interests of the children it presumably would have granted possession in the father initially.

The importance of visitation was emphasized in *Heyne v. Kucirek*, 203 Neb. 59, 277 N.W.2d 439 (1979). There, the court affirmed the lower court's modification of its decree so as to allow more contact between the petitioner and his children. The respondent, who had custody of the children, had been "uncooperative" in arranging visitation with the noncustodial parent. This court relied on the lower court's observation, " 'Visitation is a key ingredient of raising children, and it is in the best interests to be with their respective parents to the utmost. . . .' " *Id.* at 63, 277 N.W.2d at 441.

In the present case, visitation was strained by the mother's physical and economic inability to accompany her children from Alaska to Nebraska and back. While a move from the jurisdiction does not by itself necessarily affect the best interests of the children, nevertheless, when considered in conjunction with other evidence, such a move may well be a key factor which would warrant a modification. *Marez v. Marez*, 217 Neb. 615, 350 N.W.2d 531 (1984); *Scott v. Scott*, 223 Neb. 354, 389 N.W.2d 567 (1986); *Parsons v. Parsons*, 219 Neb. 736, 365 N.W.2d 841 (1985). In *Marez, supra*, this court cited *Read v. Read*, 103 Cal. App. 2d 721, 230 P.2d 46 (1951), which held that when a mother moved her children to a distant part of the state, thus rendering frequent visits with their father impracticable, that was sufficient to justify a modification of the custody provisions.

Similarly, in *Parsons v. Parsons, supra*, the custodial mother removed her children to California, which "effectively eliminated" the father's visitation. This court held that the effective denial of the father's visitation rights could be considered in determining the best interests of the children and whether such denial justified a modification.

Apparently, the trial court anticipated that problems could arise with the removal of the boys to Alaska. It therefore placed

custody in the court, with *possession* in the mother. Such a practice is authorized by Neb. Rev. Stat. § 42-364 (Cum. Supp. 1986), and, as previously stated, was recently approved in *Christen v. Christen, supra,* and also was approved in *Peterson v. Peterson,* 224 Neb. 557, 399 N.W.2d 792 (1987). The *Peterson* opinion cited *Bartlett v. Bartlett,* 193 Neb. 76, 225 N.W.2d 413 (1975), wherein this court stated that the court may retain custody of the children when it is uncertain as to where the best interests of the children lie.

> When the best interests of the children, in regard to custody, [are] not clear, the court may, and should, place custody in the court. . . .
>
> It is evident that when a court finds it necessary to place custody of minor children in the court, it does so because it is doubtful that it is cognizant of the full story relating to the best interests of the children and of the propriety of awarding custody to one of the parties.

193 Neb. at 78-79, 225 N.W.2d at 415-16. See, also, *Berry v. Berry,* 202 Neb. 540, 276 N.W.2d 200 (1979), in which this court approved of the trial court's retaining custody of the children where "the trial court was confronted with a record which did not weigh clearly either way . . . ." *Id.* at 542, 276 N.W.2d at 201.

The *Bartlett* court further explained that retaining custody of the children in the court " ' "facilitate[s] judicial supervision and summary power to act swiftly in their [the children's] best interests," ' " and that the court may reconsider its determination upon a showing of change of circumstances. 193 Neb. at 79, 225 N.W.2d at 201; *Benson v. Benson,* 190 Neb. 87, 206 N.W.2d 51 (1973); *Lueders v. Lueders,* 187 Neb. 539, 192 N.W.2d 161 (1971).

This court, in *Mason v. Mason,* 200 Neb. 476, 263 N.W.2d 865 (1978), also emphasized the advantages which result from judicial custody of the children, namely, "If it should appear at any time that the best interests and welfare of the children are adversely affected by any circumstance, the court will be able to take prompt action to correct the situation." *Id.* at 478, 263 N.W.2d at 867.

Child custody determinations are matters initially entrusted to the sound discretion of the trial court, and, on appeal,

although the Supreme Court reviews these cases de novo on the record, the trial court's determination will normally be affirmed in the absence of an abuse of discretion. Additionally, this court may give weight to the fact that the trial judge observed and heard the witnesses and accepted one version of the facts rather than the other. *Staman v. Staman*, 225 Neb. 864, 408 N.W.2d 320 (1987); *Dobbins v. Dobbins*, 226 Neb. 465, 411 N.W.2d 644 (1987). Although the present case differs somewhat because the issue is possession of the children, not custody, nevertheless the paramount consideration for this court is whether the trial court has abused its discretion in determining the best interests of the children. See *Bartlett v. Bartlett, supra*.

The district court did not abuse its discretion in placing possession of the children in the father. Although the mother's move to Alaska was not itself a factor weighing against her, the distance, and the physical and economic obstacles in overcoming that distance, hindered the father's visitation. Thus, it was in the best interests of the children that possession of the children be placed with their father. Whether the mother refused to facilitate visitation, or was merely unable to cooperate, really makes little difference. The fact that the father was effectively denied contact with his children was sufficient to warrant a change. The best interests of the children include having access to both parents. With possession in the mother, this condition was not being met.

Furthermore, it was proper for the court to keep custody of the children and only change possession. It was unclear to the court whether the move to Alaska was in the boys' best interests, and, in fact, it turned out not to be. This type of order is designed for just such a situation.

The judgment of the district court is affirmed.

AFFIRMED.