STATE OF NEBRASKA EX REL. ZACKORY HAROLD REITZ, APPELLEE,
AND KELLY MARIE REITZ, APPELLANT, V. MITCHELL RINGER,
APPELLEE.
510 N.W.2d 294

Filed January 21, 1994.    No. S-92-382.

Firmin Q. Feltz for appellant.

Kelly Michael Hogan, of Neil E. Williams & Associates, P.C., for appellee Ringer.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

LANPHIER, J.

This action for contempt and modification of custody was initiated by the appellee father, Mitchell Ringer, against the appellant mother, Kelly Marie Reitz, after she moved with their child to Arizona without obtaining permission from the court. The district court found the mother in contempt and sentenced her to 30 days in jail. The district court, also finding that a material change in circumstances had occurred, assumed legal custody of the child and placed physical custody with the child's paternal grandparents. After a motion for new trial was filed by Reitz, the court modified the decree so that Reitz could purge herself from contempt upon paying Ringer's attorney fees of $720. On appeal, the Nebraska Court of Appeals reversed the judgment of the district court, returning custody of the parties' child to his mother, Reitz. *State ex rel. Reitz v. Ringer*, 2 NCA 688 (1993).

The Court of Appeals also determined that a trial court must find both parents unfit before acquiring temporary legal custody of a child and that when a custody decree is silent on the matter, a custodial parent is not required to obtain permission from the courts before removing a child from this jurisdiction.

We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

The parents of this 6-year-old child were never married. However, after a filiation proceeding, Ringer was determined to be the father and ordered to pay $100 per month in child support. Although Reitz was named the custodial parent, the trial court's decree ordered that Ringer was to be allowed reasonable visitation rights.

The current dispute arose in June 1991, when Reitz' position with the Keith County Zoning Administration was terminated. Unable to find another job in the area, Reitz asked Ringer to sign a document which would allow her to move with their son to Arizona. Ringer refused. Without informing Ringer, Reitz moved in November to Arizona, where she enrolled in college and obtained a job. On January 10, 1992, Ringer filed a motion for contempt and an application for modification of the original custody decree.

In March 1992, Reitz returned to Nebraska for the custody and contempt hearing. At the hearing, a psychotherapist who had treated the child testified that the child was exhibiting a lot of anger toward his father. The psychotherapist further testified that the child told him he hated his father, his father used bad words, and his father would sometimes touch the child's "wee." The psychotherapist believed the child should not be placed in the custody of the father.

The district court determined that Reitz "did willfully violate the laws of the state . . . in that she did remove the child from the state . . . without the written permission of this Court." Reitz was sentenced to 30 days in the Keith County Jail for contempt of court. The court also found a "material change in circumstances has taken place and it would be in the best interests of the minor child that neither party have legal custody and that the Court take legal custody of the child at this time until further order." The court took legal custody of the child, but placed physical custody with the child's paternal grandparents.

After Reitz moved for a new trial, the court modified its

decree so she could purge herself of the sentence by paying Ringer's attorney fees in the amount of $720.

## ASSIGNMENTS OF ERROR

Ringer alleges that the Court of Appeals erred in (1) taking jurisdiction of the appeal of custody because the trial court's custody order was interlocutory and not appealable; (2) requiring the trial court to find that both parents were unfit before placing custody of the minor child with the trial court; (3) finding that the record did not support the trial court's conclusion that extraordinary circumstances justified ordering transfer of legal custody of the minor child to the trial court; (4) finding that Reitz was not required to seek the trial court's permission before removing the child from the jurisdiction; (5) finding that the trial court's order granted "custody" of the minor child to a more distant relative; (6) determining that the record did not show a material change in circumstances; (7) determining that the trial court clearly abused its discretion by taking custody of the minor child and that such decision was clearly against the weight of the evidence; (8) failing to apply and adhere to Neb. Rev. Stat. § 42-364 (Cum. Supp. 1992), which grants the trial court the authority to take legal custody of a minor child when the court deems it in the best interests of the minor child or the court lacks adequate information concerning the best interests of the minor child; (9) failing to give great weight to the fact that the trial court had the opportunity to see and hear the witnesses and accepted one version of the facts over another; (10) finding that Ringer failed to carry his burden of proof as to changed circumstances which adversely affected the child; and (11) failing to remand this cause for further proceedings to determine what was in the best interests of the child regarding his custody. Ringer's numerous assignments of error will be consolidated into two main areas of contention for discussion below.

## STANDARD OF REVIEW

Child custody determinations are initially entrusted to the discretion of the trial judge and will be affirmed unless they constitute an abuse of that discretion. An appellate court reviews such cases de novo on the record. Where credible

evidence is in conflict on a material issue of fact, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Hansen v. Hansen*, 240 Neb. 31, 480 N.W.2d 204 (1992).

A final judgment or order in a contempt proceeding is reviewed in the same manner as in a criminal case. *Dunning v. Tallman, ante* p. 1, 504 N.W.2d 85 (1993). An appellant court, examining a final judgment or order in a contempt proceeding, reviews for errors appearing on the record. *Id.*

## JURISDICTION

Ringer first contends that the Court of Appeals erred in hearing the appeal because the trial court's custody order was interlocutory and, therefore, not appealable. Ringer correctly points out that an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). Thus, we are confronted with the threshold question of whether the order from which this appeal was taken was final within the meaning of Neb. Rev. Stat. § 25-1911 (Cum. Supp. 1992). Section 25-1911 provides that a "judgment rendered or final order made by the district court may be reversed, vacated, or modified for errors appearing on the record." Neb. Rev. Stat. § 25-1902 (Reissue 1989) provides that an "order affecting a substantial right made in a special proceeding . . . is a final order which may be vacated, modified or reversed, as provided in this chapter."

"Although 'special proceeding' has no statutory definition, this court has . . . construed the phrase to mean every civil statutory remedy which is not encompassed in what is now chapter 25." *In re Interest of R.G.*, 238 Neb. at 413, 470 N.W.2d at 787. Under this definition, custody determinations, which are controlled by § 42-364, are considered special proceedings. Accordingly, if the district court's order affected a substantial right of Reitz', it would be considered a final order. We have stated that a parent "has a liberty interest in raising her or his child, a concept which encompasses the child's custody, care, and control." *In re Interest of R.G.*, 238 Neb. at 416, 470 N.W.2d at 789. "[T]he relationship between parent and child is

constitutionally protected." *Quilloin v. Walcott*, 434 U.S. 246, 255, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978). It is thus clear that the district court's order affected a substantial right of Reitz' and is a final order. The Court of Appeals was correct in so ruling.

## CUSTODY

The Court of Appeals correctly recognized that ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Hibbard v. Hibbard*, 230 Neb. 364, 431 N.W.2d 637 (1988). The party seeking the modification has the burden of showing such a change of circumstances. *Peterson v. Peterson*, 239 Neb. 113, 474 N.W.2d 862 (1991). Although the trial court found that Ringer had made such a showing, thus warranting a change in custody, the Court of Appeals held that he "clearly failed to carry his burden of proof." *State ex rel. Reitz v. Ringer*, 2 NCA 688, 698 (1993).

The Court of Appeals, citing *Haake v. Haake*, 215 Neb. 889, 341 N.W.2d 911 (1983), noted that this court has previously held that removal of a child from the state, without more, does not amount to a change of circumstances warranting a change of custody.

In *Hibbard v. Hibbard, supra*, we found that a father's denial of a mother's visitation rights, together with his removal of their children from the United States without the court's permission, constituted a material change of circumstances justifying transfer of custody. We have often held that visitation is a key ingredient of raising children, and it is in their best interests to be with their respective parents to the utmost. *Id.*; *Clark v. Clark*, 228 Neb. 440, 422 N.W.2d 793 (1988); *Heyne v. Kucirek*, 203 Neb. 59, 277 N.W.2d 439 (1979).

Here, Reitz' move resulted in a denial of Ringer's court-ordered visitation rights. The trial court properly determined that modification was warranted.

We must review, however, whether the modification made was appropriate. The trial court entered the following order modifying its previous custody determination:

> A material change in circumstances has taken place and it would be in the best interests of the minor child that neither party have legal custody and that the Court take legal custody of the child until further Order. Physical possession shall be placed with the paternal grandparents until Petitioner serves her jail sentence <u>and</u> establishes a permanent residence within the 13th Judicial District in the State of Nebraska. Petitioner shall be responsible for scheduling a hearing and giving notice to the Respondent of the date and time of the scheduled hearing. . . .

The Court of Appeals held: "A review of the record does not support a conclusion of extraordinary circumstances such as would support the court's acquiring legal custody of the child." *State ex rel. Reitz v. Ringer*, 2 NCA at 697-98. The Court of Appeals faulted the trial court for failing to make specific findings concerning Reitz' or Ringer's fitness before taking custody of the child. The Court of Appeals applied the following rule from *Ensrud v. Ensrud*, 230 Neb. 720, 725, 433 N.W.2d 192, 196 (1988):

> [I]f a parent is fit to have custody of a child involved in a dissolution proceeding, a court's acquired and retained legal custody of such child should be a rare disposition warranted only in the extraordinary situation where the court lacks adequate information concerning the best interests of the child in relation to the custody question.

In *Ensrud*, there was absolutely no issue of parental fitness; the trial court was deciding which of the two parents would be the custodial parent. The issue facing the trial court was what was in the best interests of the child. Although in *Ensrud* we suggested that a court must always, prior to acquiring custody of a minor, make a preliminary determination as to parental fitness, there can be no such requirement when the court wishes to take custody so that it can acquire further information on parental fitness. Here, the trial court acknowledged that it needed more information in order to make an informed decision regarding parental fitness. Requiring the trial court to rule on parental fitness before that information is obtained would put the "cart before the horse." *Ensrud* is, therefore,

inapplicable.

*Bartlett v. Bartlett*, 193 Neb. 76, 225 N.W.2d 413 (1975), is instructive on the issue of parental fitness in this context. In *Bartlett*, we stated:

> It is evident that when a court finds it necessary to place custody of minor children in the court, it does so because it is doubtful that it is cognizant of the full story relating to the best interests of the children and of the propriety of awarding custody to one of the parties. Such an order is ordinarily temporary and probationary in nature and reserves in the court the power to make further summary disposition of minor children when it becomes apparent that their best interests require it.

193 Neb. at 79, 225 N.W.2d at 415-16.

The Court of Appeals' reliance on *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992), and *Nielsen v. Nielsen*, 207 Neb. 141, 296 N.W.2d 483 (1980), is misplaced. Both of those cases addressed grants of permanent custody to third parties. Here the issue is temporary custody. The trial court acquired custody temporarily so it could further investigate the issue of permanent custody.

In light of the foregoing, we find that the Court of Appeals was in error in deciding that the trial court was required to determine that both parents were unfit before taking custody of the child. The requirements of *Nielsen* and its progeny do not apply when a court is merely taking custody of a child temporarily, pending a determination of permanent custody. The trial court properly took temporary custody of the child when it was unsure either parent was fit. Moreover, at the time the court took custody, the child's psychotherapist believed the child should not be placed in the custody of the father, and the court knew the mother was going to be put in jail for contempt. Assuming custody until the situation changed and further information was obtained appeared to be the court's only viable option.

However, requiring that Reitz establish a permanent residence within the 13th judicial district before seeking to regain custody was unwarranted. An award of custody should not be interpreted as a sentence to immobilization. *Vanderzee v.*

*Vanderzee*, 221 Neb. 738, 380 N.W.2d 310 (1986); *Korf v. Korf*, 221 Neb. 484, 378 N.W.2d 173 (1985); *Boll v. Boll*, 219 Neb. 486, 363 N.W.2d 542 (1985); *Gottschall v. Gottschall*, 210 Neb. 679, 316 N.W.2d 610 (1982). When we say it is the best policy to keep minor children within the "jurisdiction," we are referring to the jurisdiction of the state. See *id*. It was an abuse of discretion by the trial court to require that Reitz live within the confines of the 13th judicial district. Where the father can only contribute $100 per month and the mother, having lost her job, can obtain gainful employment out of the state, it would seem that the best interests of the child would necessitate allowing the mother to leave the jurisdiction of the state if gainful employment can be found elsewhere.

Ringer next assigns as error the Court of Appeals' finding that Reitz was not required to seek the trial court's permission before removing the child from the jurisdiction. In regard to this issue, the Court of Appeals stated: "[N]o case law could be found requiring a custodial parent to receive written permission prior to leaving the jurisdiction, where the original decree did not place a travel restriction on the custodial parent." *State ex rel. Reitz v. Ringer*, 2 NCA 688, 695 (1993). However, this court has held that whenever removal from the jurisdiction is contemplated, application should be made to the court and a full disclosure made of the advantage to the child if consent is given for such change of residence. *Osborn v. Osborn*, 143 Neb. 1, 8 N.W.2d 444 (1943). Although we may not have had occasion to state this rule under the precise circumstances of this case, it is nonetheless the law in Nebraska that before a custodial parent can remove a child from the state, permission of the court is required, whether or not there is a travel restriction placed on the custodial parent. *Id*. See, also, *Gerber v. Gerber*, 225 Neb. 611, 407 N.W.2d 497 (1987) (generally, a custodial parent seeking removal of a child from the jurisdiction must establish that removal is in the best interests of the child and must demonstrate that departure from the jurisdiction is the reasonably necessary result of the custodial parent's occupation, a factually supported and reasonable expectation of improvement in the career or occupation of the custodial parent, or required by the custodial parent's

remarriage); *Parsons v. Parsons*, 219 Neb. 736, 365 N.W.2d 841 (1985) (trial court did not abuse its discretion in denying a mother's application to leave the state, where the mother admitted she moved with her children to another state without the consent of the court); *Prell v. Prell*, 181 Neb. 504, 149 N.W.2d 104 (1967) (custodial parent's removal of children from the state without the consent of the parent with visitation rights or the court was a sufficient change of circumstances justifying the court in reducing the amount of child support payments).

Therefore, the trial court's finding that Reitz "beyond a reasonable doubt" did "willfully violate the laws of the state of Nebraska in that she did remove the child from the state of Nebraska without the written permission of this Court" was correct. However, that is not to say that its judgment of contempt was proper.

At the conclusion of the contempt proceedings, the trial court addressed Reitz and stated:

> I do believe that you intentionally moved to the state of Arizona without notifying the respondent for the sole and only purpose of prohibiting him from exercising those visitation rights and attempting to alienate the minor child from his father.

> For that reason, it would be the judgment of this Court that you be sentenced to the Keith County Jail for a period of 30 days and that jail sentence will commence at the conclusion of this hearing.

This statement suggests that the nature of the imposed sanction was punitive. The trial court was not trying to exact compliance with its order; rather, it was punishing Reitz for her completed act of disobedience. That the sanction was punitive does not establish the nature of the contempt proceedings for the purposes of review. The character, nature, or purpose of a contempt proceeding is determined by the procedure used in a trial to determine whether there is contempt and the sanction imposed. *Dunning v. Tallman, ante* p. 1, 504 N.W.2d 85 (1993).

In this case, the procedures used are of little help in determining the nature of these contempt proceedings. It was not the State, but, rather, Ringer who initiated these contempt proceedings. In criminal contempt proceedings where the act

charged was not committed in the presence of the court, the prosecution should be in the name of the State and by information. *McFarland v. State*, 172 Neb. 251, 109 N.W.2d 397 (1961). Reitz was then instructed by the court that she could claim her Fifth Amendment privilege against self-incrimination, as in criminal contempt proceedings. The procedures used were thus partly indicative of criminal contempt and partly indicative of civil contempt.

We have previously encountered a case in which civil contempt procedures were used, and the sanction imposed was punitive, *In re Contempt of Sileven*, 219 Neb. 34, 361 N.W.2d 189 (1985). The proceedings in that case were noticed as civil, and the contemner was not advised of his rights against self-incrimination, but was sentenced punitively. There we determined that the contempt proceedings were civil in nature. We held the criminal sanction invalid, since imposed in a proceeding that was instituted and tried as civil contempt. The same result is appropriate here.

That the trial court later amended Reitz' sentence so that she could purge herself of the jail time is of no consequence. Allowing her release upon the payment of $720 to Ringer's attorney did not change the punitive sanction into a coercive one. The trial court made clear that the purpose of the sentence was to punish Reitz for removing her child from the jurisdiction. Reitz was not being sanctioned for the failure to pay Ringer's attorney. Here, even after the court amended the sentence, there was no way for Reitz to avoid paying the $720. The fine was absolute and not subject to mitigation.

> In the coercive sanction . . . the contemner holds the keys to his jail cell, in that the sentence is conditioned upon his continued noncompliance. The punitive sanction is much like the sentence in a criminal case, in that it is absolute and not subject to mitigation if the contemner alters his future conduct toward the court . . . .

*In re Contempt of Liles*, 216 Neb. 531, 534, 344 N.W.2d 626, 628-29 (1984). The fine only served to increase an already excessive sentence.

We note that the usual procedure on appeal in such a case is to reverse the citation for contempt and remand the cause to the

trial court in order that a proper civil penalty can be imposed or in order that a criminal proceeding can be conducted. *In re Contempt of Sileven, supra*. Here, however, given that Reitz has already spent 30 days in jail, we decline to follow the usual procedure. Instead, we affirm those parts of the Court of Appeals' judgment in which Reitz' conviction for criminal contempt was set aside; the award of $720 in attorney fees to Ringer was reversed; and Reitz' remaining sentence, if any, was vacated.

The Court of Appeals awarded Reitz reasonable attorney fees for representation at the trial, and Reitz has requested that this court award her attorney fees for representation before this court and the Court of Appeals.

In Nebraska, the general rule is that an attorney fee may be recovered only when authorized by statute, or when a recognized and accepted uniform course of procedure allows recovery of an attorney fee. *Dunning v. Tallman, ante* p. 1, 504 N.W.2d 85 (1993).

Attorney fees were authorized by Neb. Rev. Stat. § 42-351 (Supp. 1991) for proceedings to modify custody which arise out of dissolution of marriage cases. See *Nimmer v. Nimmer*, 203 Neb. 503, 279 N.W.2d 156 (1979). See, also, *Lainson v. Lainson*, 219 Neb. 170, 362 N.W.2d 53 (1985). However, this custody dispute arose out of a filiation proceeding, and no statute authorizes an award of attorney fees in such a proceeding. No uniform course of procedure allows recovery, either. The Court of Appeals, therefore, erred in awarding Reitz attorney fees for representation at the trial. For the same reason, we deny the motion for attorney fees Reitz filed in this court.

Ringer lastly contends that the Court of Appeals failed to give "great weight" to the fact that the trial court had the opportunity to see and hear the witnesses and accepted one version of the facts over another, and that this case should have been remanded for further proceedings to determine what was in the best interests of the child.

In de novo review, " ' "when the evidence is in conflict, [an appellate court] considers, and *may* give weight to, the fact that the trial judge heard and observed the witnesses and accepted

one version of the facts rather than another." ' " (Emphasis supplied.) *Schulze v. Schulze*, 238 Neb. 81, 84, 469 N.W.2d 139, 141-42 (1991). Under this standard, an appellate court is not required to give any weight to the trial court's findings, much less great weight. Accordingly, this argument is without merit.

## CONCLUSION

Although the trial court's order was final so that the Court of Appeals had jurisdiction of the case, the Court of Appeals erroneously held that a trial court must find both parents unfit before acquiring temporary legal custody of a child. The Court of Appeals also erroneously determined that when a divorce decree is silent on the matter, a custodial parent is not required to obtain permission from the courts before removing a child from this jurisdiction.

The Court of Appeals properly set aside Reitz' conviction for criminal contempt and the trial court's award of $720 in attorney fees to Ringer. However, with regard to the rest of the Court of Appeals' judgment: The Court of Appeals is directed to remand this cause to the district court, which shall make a determination of permanent custody; pursuant to its award of custody, the trial court shall require that child support payments be in accordance with the Nebraska Child Support Guidelines; and the Court of Appeals' award of reasonable attorney fees to Reitz for the trial below is reversed, and Reitz' motion for attorney fees for representation before this court and the Court of Appeals is denied.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

SHANAHAN, J., not participating in the decision.

WHITE, J., dissenting.

The majority concludes, in part, that the district court properly took legal custody of the minor child. I respectfully dissent.

The majority finds that there has been a material change in circumstances warranting modification of the decree. The majority then addresses whether the ordered modification was proper, that is, whether the court properly obtained legal custody of the child. In this context, the majority confronts our

opinion in *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988).

In *Ensrud*, we held that a court may take legal custody of a child in a dissolution proceeding only if both parents are unfit or if the court lacks adequate information regarding the best interests of the child. Although the majority states that *Ensrud* does not apply, the majority in fact expands the *Ensrud* rule and holds that a court may also take legal custody of a child if the court lacks adequate information regarding the parents' fitness. In applying the expanded rule, the majority assumes that the trial court in the present case lacked information regarding the parents' fitness and concludes that the court was therefore justified in taking legal custody.

I disagree with the majority's assumption and conclusion. In the present case, the trial court did not lack information regarding the fitness of *both* parents.

The father's fitness was called into question by the mother. In her answer, the mother alleged that the father was an unfit parent. The mother testified to support this allegation. The mother also presented an expert who testified that it would not be in the child's best interests to grant custody to the father. The trial court stated that it viewed the mother's testimony with some skepticism. Nevertheless, the trial court respected the expert as a witness with an unbiased opinion. Arguably, then, the trial court may have concluded that the father's fitness required further investigation.

The mother's fitness, however, was never called into question. There were neither allegations nor evidence to suggest that the mother was unfit. The mother's only failings as a parent were (1) that she would be in jail on contempt charges for 30 days and (2) that she had previously taken the child out of the state without the court's permission. Even if these failings raised a question of the mother's fitness—which I do not purport to decide—both of these failings were fully known to the court at the time of the hearing; neither of these failings required further investigation.

In fact, the trial court never explicitly addressed the parents' fitness. Instead, the trial court stated that "it would be in the best interests of the minor child that neither party have legal

custody and that the Court take legal custody of the child at this time until further order." The trial court's custody order does not mention fitness, but instead echoes the "best interests" language.

I would find that the trial court did not lack information regarding the mother's fitness. The trial court was not entitled to take legal custody of the minor child under the expanded *Ensrud* rule.

I would also find that the trial court was not entitled to take legal custody of the minor child under the old *Ensrud* rule. The trial court did not find that either the mother or the father was unfit. As a general rule, unfitness must be affirmatively established. See *Peterson v. Peterson*, 224 Neb. 557, 399 N.W.2d 792 (1987). The trial court also did not find that this was one of the extraordinary situations in which the court lacked information as to the best interests of the child. See *Ensrud, supra.*

The record reflects that the trial court had no need to investigate fitness, that the parents were not affirmatively adjudicated to be unfit, and that the court did not lack information as to the best interests of the child. Therefore, the trial court could not properly retain legal custody of the child.

CAPORALE, J., joins in this dissent.