JOHN A. MCDERMOTT, APPELLEE, V.
JONI M. MCDERMOTT, APPELLANT.
602 N.W. 2d 676

Filed November 23, 1999.    No. A-98-1266.

Joni M. McDermott, pro se.

Paul R. Elofson, of McGill, Gotsdiner, Workman & Lepp, P.C., for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Joni M. McDermott, pro se, appeals the judgment of the district court for Douglas County finding her in contempt and

sentencing her to 6 months' probation. On appeal, Joni challenges the contempt finding, the factual findings of the court supporting the contempt finding, and the order requiring her to pay $930 of the attorney fees incurred by her ex-husband, John A. McDermott. For the reasons stated below, we reverse, and remand with directions.

## II. FACTUAL BACKGROUND

On December 23, 1997, a second amended parenting plan was filed in the district court. In this plan under the heading of holiday visitation, the parties agreed, among other things, that the parties' children would spend each Father's Day with their father. The plan further provides that holiday visitation commence at 10 p.m. the preceding night and end at 6:30 p.m. on the holiday if the next day is a school day or 9 p.m. if the next day is not a school day. On June 15, 1998, the parties were ordered by the court to comply with the terms of the above parenting plan.

The record shows that Joni desired the children to attend her parents' 50th wedding anniversary open house on the afternoon of June 14, 1998. The open house fell on a weekend when the children were scheduled to be visiting John. Apparently, some negotiations occurred between Joni and John regarding this event. According to Joni, an agreement for the children to attend the open house had been reached but which John failed to abide by. According to John, no agreement was reached because Joni refused to put anything in writing. On June 14, John did not return the children for the open house.

The record further shows that a family photograph originally scheduled to be taken at the open house was rescheduled for June 21, 1998, in order that the parties' children could be in the photograph. On June 21, three of the children's cousins were to be baptized, and the photograph was to be taken at the baptism. However, June 21 was Father's Day and, therefore, John's visitation day. According to Joni, she attempted to negotiate with John to procure the children's presence at the baptism. When she was unable to communicate with John, she decided to not make the children available to John for his Father's Day visitation until after the baptism. Joni was fully aware that the plan provided for Father's Day visitation.

When John arrived at Joni's residence at 10 p.m. on June 20, no one was present at the residence. Joni had left the children at a babysitter's home with instructions that the children were not to be returned home until 10:30 p.m. Joni made the children available to John at 3 p.m. on June 21, and the children spent the night with John.

On June 24, 1998, John filed an application for an order to show cause why contempt sanctions should not be imposed upon Joni for knowingly and willingly violating the court's order with regard to his visitation based on Joni's failure to provide the children to John at 10 p.m. on June 20. On July 8, the district court issued an order to show cause and noticed the matter for hearing on August 7.

The contempt hearing was conducted on August 7, 1998. John's attorney called Joni and John to testify. After hearing the evidence, the district court pronounced its judgment from the bench. The district court found Joni guilty beyond a reasonable doubt of "indirect criminal contempt of Court" for failure to abide by the provisions of the December 23, 1997, parenting plan that the parties were ordered to abide by. The court stated that it was finding Joni in criminal contempt because the court "must impose punitive sanctions to accurately and adequately address the willful disobedience of the Court's rules and directives." The court found that Joni knew or should have known that her conduct was impermissible and that her conduct was willful, intentional, "obstructive, disruptive and derogatory to the relationship between parent and child." As noted by the court, "the children, once again, are the losers, now having missed both their grandparents' 50th wedding anniversary as well as Father's Day."

The court imposed sentence of 6 months' probation, of which the last 10 days were to be served in jail unless that requirement was waived. Terms of the probation included drug and alcohol evaluations, drug and alcohol testing, and the performance of 25 hours' community service. The court further found that reasonable attorney fees and costs should be awarded to John. The court ordered John to submit an application and indicated that, if needed, a hearing would be held on the application. On September 28, 1998, a hearing on attorney fees and costs was

held. After receiving the evidence, the court ordered Joni to pay attorney fees of $930 and costs of $27.52. Thereafter, Joni appealed to this court.

## III. ASSIGNMENTS OF ERROR

On appeal, Joni assigns that the district court erred in finding her in indirect criminal contempt, criminally punishing her in a civil action, finding that the children had missed visitation on Father's Day, failing to recognize the parties' verbal and written agreement regarding the children's attendance at the anniversary open house, failing to recognize John's noncompliance with the parenting plan, and ordering her to pay attorney fees incurred by John.

## IV. ANALYSIS

We address Joni's assignment of error that the district court erred in imposing a punitive sanction in a civil contempt proceeding. We begin with several general principles related to contempt proceedings. Contempt is either direct, committed in the presence of the court while in session, or constructive, not committed in the presence of the court. Constructive contempt is divided into two classes, civil and criminal. A criminal contempt is prosecuted to preserve the power and vindicate the dignity of the court and to punish for disobedience of its order. *State ex rel. Kandt v. North Platte Baptist Church*, 225 Neb. 657, 407 N.W.2d 747 (1987). A civil contempt is instituted to preserve and enforce the rights of private parties to a suit, to compel obedience to orders and decrees made to enforce such rights, and to administer the remedies to which the court has found the parties to be entitled. *Eliker v. Eliker*, 206 Neb. 764, 295 N.W.2d 268 (1980).

When a coercive sanction is imposed, the contemner holds the keys to his or her jail cell, in that the sentence is conditioned upon his or her continued noncompliance. *Jessen v. Jessen*, 5 Neb. App. 914, 567 N.W.2d 612 (1997). In criminal contempt, a punitive sanction is imposed which is akin to a criminal sentence, in that it is not subject to mitigation should the contemner comply with the court order. See *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991). A contempt

order imposing a punitive sanction is a final order and is reviewable on appeal. See *id.*

In the case before us, the district court indicated that it was citing Joni for "indirect criminal contempt." The court further stated that it was imposing a punitive sanction "to accurately and adequately address the willful disobedience of the Court's rules and directives." The sanction imposed was 6 months' probation. Joni was not provided any manner in which to purge herself of the contempt. Therefore, the nature of the imposed sanction was punitive. As a result, it is a final order reviewable on appeal.

That the sanction was punitive does not establish the nature of the contempt proceeding for the purposes of review. The character, nature, or purpose of a contempt proceeding is determined by the procedure used in a trial to determine whether there is contempt and the sanction imposed. *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994). In criminal contempt proceedings where the act charged was not committed in the presence of the court, the prosecution should be in the name of the State and by information. *Id.* In criminal contempt proceedings, an alleged contemner is instructed that he or she may claim his or her Fifth Amendment privilege against self-incrimination. See *id.*

In *Ringer*, one party initiated contempt proceedings against the other party. The alleged contemner was instructed by the court that she could claim her Fifth Amendment privilege against self-incrimination. The *Ringer* court found that civil contempt procedures were used and that a punitive sanction was imposed. The *Ringer* court concluded that the district court erred in imposing a punitive sanction in a civil contempt proceeding. The Supreme Court, therefore, affirmed the Court of Appeals' reversal of the contempt citation and vacation of the sentence imposed as a result. Similarly, in *Maddux, supra*, the Supreme Court noted plain error and stated that it was evident from the record that the trial court committed error when it improperly imposed a punitive sanction in a civil contempt proceeding. In *Maddux*, the contempt proceeding was instituted by one of the parties and tried as a civil, not a criminal, contempt. See, also, *In re Contempt of Sileven*, 219 Neb. 34, 361 N.W.2d 189 (1985) (holding that criminal sanction invalid when imposed in proceeding

instituted and tried as civil contempt where proceedings were noticed as civil and contemner not advised of rights against self-incrimination but sentenced punitively).

In the case before us, John, not the State, initiated the contempt proceeding. As a result, the contempt proceeding was noticed as a civil proceeding. Furthermore, the record does not show that Joni was instructed that she could claim her Fifth Amendment privilege against self-incrimination. The record shows that she was called as a witness by John's attorney and testified without being advised of this right. Based upon the authority discussed above, we conclude that the criminal sanction imposed in this case was invalid because it was imposed in a proceeding that was instituted and tried as civil contempt.

The Nebraska Supreme Court stated in *Ringer, supra,* that the usual procedure on appeal in a case such as the one before us is to reverse the citation for contempt and remand the cause to the trial court in order that a proper civil penalty can be imposed or in order that a criminal proceeding can be conducted. Therefore, we reverse the citation for contempt and remand the case for further proceedings consistent with this opinion. In addition, we reverse the order of attorney fees and costs. Given our above resolution of the case, we need not address Joni's remaining assignments of error.

REVERSED AND REMANDED WITH DIRECTIONS.