ROBERT D. MCFARLAND, COUNTY JUDGE, PLAINTIFF IN ERROR, v. STATE OF NEBRASKA ET AL., DEFENDANTS IN ERROR.

86 N. W. 2d 182

Filed November 22, 1957. No. 34272.

488

*Wright, Simmons & Harris,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Clarence A. H. Meyer,* for defendants in error.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This opinion involves separate motions, one by relators Bern R. Coulter, C. Palmer Dunlap, and May D. Anderson, defendants in error, and the other by the State of Nebraska, also included in these proceedings as a defendant in error. Both motions raise the question of whether or not the respondent, plaintiff in error, has, by involuntarily complying with the mandamus order, so purged himself of contempt that any questions relating to the correctness thereof are now moot. The State raises the further contention that inasmuch as the proceedings are private in their character that any contempt arising in relation thereto could only involve the question of civil contempt to which the State is neither a necessary or proper party.

The factual situation out of which this error proceeding had its origin is as follows: Christina D. Dugger, a

resident of Morrill County, died on September 21, 1956. She was thought to have died intestate so two of her heirs at law filed a petition for the administration of her estate in the county court of Morrill County. They were relators C. Palmer Dunlap, a nephew, and May D. Anderson, a niece, both of Chehalis, Washington. Their petition was filed on September 27, 1956, by relator Bern R. Coulter, an attorney at law. Coulter was appointed and qualified to act as administrator of the estate and letters of administration were issued to him on November 5, 1956. These proceedings were had prior to respondent becoming county judge.

After respondent became county judge he found an instrument in his office on April 11, 1957, which appeared to be a will of Christina D. Dugger, deceased. On the same day respondent called Coulter on the telephone and advised him of that fact, and later that day turned the will over to Coulter. Thereafter, at about 11 a.m., on April 18, 1957, Jack E. Lyman and Marvin L. Holscher, attorneys at law, filed a petition in behalf of Agnes D. Lynn of Coopersville, Michigan, a sister of decedent, asking for the probate of this will, and that the court fix a time and place for a hearing, and to publish the necessary notice thereof as is by law required. This the county judge did, fixing the time for hearing at 10 a.m., on May 17, 1957, in his office, and caused notice thereof to be published accordingly. On the same day (April 18, 1957), at about 4:30 p.m., relator Coulter left with respondent a petition asking to have the will probated, which was signed by the other two relators, and submitted with it two orders for the respondent to sign. The first order was captioned as an "Order Fixing Date for Hearing on Will" and the second as a "Notice of Hearing." The first of these orders set the date for hearing at 9 a.m., on May 13, 1957, in the county courtroom and directed the notice to be published in the Bridgeport News-Blade. The respondent filed the petition but refused to sign the order fixing a time, date,

and place for hearing on the application for the allowance of the will and also refused to sign a notice to be published pursuant thereto. This was apparently done on the basis that such an order had already been issued. The mandamus action followed immediately, being filed on April 19, 1957.

On April 20, 1957, the district court issued a peremptory writ of mandamus, granting relators the relief they had asked for. Respondent did not comply with the command thereof. Consequently, on April 27, 1957, an alias peremptory writ of mandamus was issued by the district court commanding and directing respondent to comply, nunc pro tunc, with the previous writ issued on April 20, 1957, by signing the order hereinbefore referred to as of April 20, 1957. When respondent refused to do so he was ordered committed to jail until he complied. It was only after this latter order was issued that respondent complied, doing so involuntarily. After respondent's motion for new trial had been overruled, this error proceeding was taken.

The transcript recites the following with reference to what happened in the court below on April 27, 1957, insofar as it is material here: "The Court then directed the respondent to comply with the Alias Peremptory Writ of Mandamus, and to sign and file an order fixing a time for hearing on the petition for the probate of the Will in the matter of the estate of Christina D. Dugger, deceased, and to further sign and file a notice of hearing in said matter. The respondent in open Court announced through his attorney, Robert G. Simmons, Jr., that he would not comply with either the original Peremptory Writ of Mandamus or the Alias Peremptory Writ of Mandamus. The Court, being fully advised in said matter, finds the respondent guilty of contempt of court and orders that the respondent, Robert D. McFarland, County Judge, be committed to the county jail in Morrill County, Nebraska, until he has purged himself of contempt by signing the order and notice

above referred to. The costs of this proceeding are hereby taxed to the respondent. * * * Respondent then filed a written compliance with the order of the Court. The Court, being fully advised, finds that the respondent has involuntarily complied with the Alias Peremptory Writ of Mandamus, and execution of the jail sentence is hereby suspended."

Section 25-2168, R. R. S. 1943, provides: "Any private person may on his own relation sue out writs of mandamus without application to the prosecuting attorney."

As held in Burdette v. Munger, 144 Ill. App. 164, citing Winslow v. Nayson, 113 Mass. 411: A contempt proceeding in a civil case is really but an incident to the principal cause, and all the papers relating to it should be filed with the other papers in the case.

"Proceedings for contempts are of two classes,—those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce." In re Nevitt, 117 F. 448. See, also, Maryott v. State, 124 Neb. 274, 246 N. W. 343; Wright v. Wright, 132 Neb. 619, 272 N. W. 568; Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. N. S. 874. As stated in Maryott v. State, *supra:* "Where a party to an action fails to obey an order of the court, made for the benefit of the opposing party, the rule is well recognized that

such act is, ordinarily, a mere civil contempt, * * *." And, as stated in Gompers v. Bucks Stove & Range Co., *supra:* "If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court. It is true that punishment by imprisonment may be remedial, as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order."

This is clearly a case of civil contempt to which the State is neither a necessary nor proper party. As stated in In re Nevitt, *supra:* "But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings."

We come then to the question, are the issues moot? We said in Deines v. Schwind, 89 Neb. 122, 130 N. W. 1051, that: "Where, on the hearing of an appeal, it is disclosed that the record presents nothing but a moot question for the determination of the supreme court, ordinarily the proceeding will be dismissed or the judgment of the district court will be affirmed." The same

would be true on the hearing of an error proceeding.

It was held in Stark v. Hamilton, 149 Ga. 44, 99 S. E. 40, that: "* * * the only relief that the plaintiff in error could gain by a reversal of the judgment would be a discharge from custody; and it appearing that he has already been discharged, the question raised by the bill of exceptions is moot, and the writ of error should be dismissed." See, also, McCallum v. McCallum, 162 Ga. 84, 132 S. E. 755; Wools v. Reberger, 209 Ind. 99, 198 N. E. 65. As stated in Wools v. Reberger, *supra:* "* * * the cause was submitted to the court for trial which resulted in a judgment entered on July 19, 1933, finding appellant guilty and committing him to the Indiana State Farm so long and until he removed the obstructions from said right of way. * * * 'The court being advised that the defendant Grover Wools, has complied with the order and judgment of the court, made and entered June 15, 1931, in this cause by removing and causing to be removed all obstructions from the way recognized and referred to in said order and decree, the Sheriff of Clay County, Indiana, is now and hereby ordered to release from his custody, said Grover Wools.' * * * From the foregoing it appears clearly that the question is now moot and there is nothing for the court to pass upon. The obstruction in the right of way has been removed, and the appellant has been discharged from the custody of the sheriff."

In view of what has already been said of civil and criminal contempt, and the purposes thereof, it is self evident that no issue remains to be decided here. Nothing could be gained by our holding that the commitment was improper for respondent is no longer in jail. He has not been found guilty of criminal contempt, in which case he would be entitled to have his conviction reviewed. Here the purpose of the order to jail was to coerce respondent to comply with the mandamus order of the court. Whether or not that order is correct can properly be determined in an appeal taken

therefrom. Both motions should be and are sustained and the error proceeding is dismissed. Costs resulting from this error proceeding are taxed to respondent.

ERROR PROCEEDING DISMISSED.