STATE OF NEBRASKA EX REL. SALLY JO COLLINS, APPELLEE, V.
JAMES F. BEISTER, APPELLANT.

420 N.W.2d 309

Filed March 18, 1988.    No. 86-096.

George H. Moyer, Jr., of Moyer, Moyer, Egley & Fullner, for appellant.

Marianne Clifford Upton, Special Deputy Boone County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

This is an appeal from the district court for Boone County, Nebraska. That court found defendant, James F. Beister, guilty of contempt of court and ordered him to pay a $50 fine. Defendant has appealed to this court.

The record shows that on June 18, 1985, pursuant to Neb. Rev. Stat. § 43-512.03(3) (Reissue 1984), the State of Nebraska ex rel. Sally Jo Collins filed a petition to determine the paternity of a child born out of wedlock. In its petition to establish paternity, the State sought an order determining that the defendant was the father of the child and requiring defendant to pay child support and expenses for the dependent child. The defendant filed a general denial and alleged an affirmative defense that the mother, during the period of possible conception, had sexual relations with numerous men, "any one of whom could be the father of the child."

On August 20, 1985, the State filed a motion requesting a court order requiring the mother, the minor child, and

defendant to submit to genetic testing, pursuant to Neb. Rev. Stat. § 43-1414 (Reissue 1984). On September 3, 1985, defendant filed "Objections to Motion For Genetic Testing and Motion To Quash Said Motion." A hearing was held on the State's motion and on defendant's motion on October 8, 1985. After hearing, the court denied defendant's motion to quash and set the matter for further hearing on November 19, 1985, on the State's motion for genetic testing, in order to determine the details of the genetic testing.

At that hearing, defendant's counsel appeared for the defendant. The defendant himself did not appear. The court then ordered defendant, as well as the mother and the child, to appear at the Boone County Memorial Hospital for genetic testing on December 3, 1985. The following ensued:

MR. MOYER: Let the record show that the defendant respectfully declines to obey the order of the Court and to present himself for genetic testing at the Boone County Hospital on December 3, 1985, at the hour of 10:00 a.m. or at any other time and ask that the Court find the defendant in contempt of Court for refusing to obey the Court's order and assesss [sic] a fine against the defendant so that we may present this whole issue to the Supreme Court of the State of Nebraska.

THE COURT: Let the record so reflect that the Court will find the respondent in this matter in contempt, and under the contempt powers of the Court — Now, you are going to put up bond, I assume, for appeal?

MR. MOYER: Traditional fine has been $50.00.

THE COURT: He can purge contempt. If he does not appear on that date, he will be picked up and put in jail and held to purge himself only by presenting himeslf [sic] at the hospital on that date.

MR. MOYER: All right, Judge, now what are you doing?

THE COURT: He's in contempt. Have you not consented that?

MR. MOYER: Yes, Your Honor. If you please, there are at least four cases that I can recall in the Court in which matters of this kind have been presented to the Supreme

Court of the State of Nebraska. Ordinarily what the Court does in cases — in those cases which involve a discovery proceeding — I will admit nothing like this paternity matter — the Court simply fined the defendant $50.00, thereby creating a final judgment which their opinion was appealed to the Supreme Court of the State of Nebraska in order to resolve the legal questions involved.

It was clearly understood in those cases, as it clearly should be understood in this case, Your Honor, that the defendant was taking his stand merely for the purpose of obtaining an adjudication by the Supreme Court of the State of Nebraska upon his rights in the case and not because of any disrespect for the Court, and no jail sentences were posed and nothing was mentioned about jail.

THE COURT: I assume, counsel, with the dilemma we are in, is the fact the amount of bond has to be placed in lieu of his time in jail. That is what I would say.

MR. MOYER: Why is the Court talking about jail?

THE COURT: All right. I will set the jail — fine him $50.00, and you can appeal your case.

MR. MOYER: Thank you, Your Honor. We will file a motion for new trial promptly before the Court on the 3rd of December.

Defendant, having persuaded the court to do exactly what the court did, then filed a motion for a new trial on December 2, 1985. On December 13, 1985, defense counsel served notice on the State to take the depositions of the mother of the dependent child and an employee of the state Department of Social Services. On December 17, 1985, the State filed a motion for a protective order as to the taking of the deposition of the state employee. On January 14, 1986, the court denied defendant's motion for a new trial and sustained the State's motion for a protective order. Defendant filed his notice of appeal.

In his brief, the defendant sets out 12 assignments of error, including several concerning court rulings on defendant's motions filed after the court's contempt order.

We first note that defendant is seeking this court's review of the trial court's rulings in procedural matters occurring after the

trial court's entry of its order of contempt on November 19, 1985. Any such attempt to review such orders is premature. This court will not review, on a piecemeal, interim basis, discovery procedures of the parties. Defendant's assignments of error on such matters will not be further discussed.

We further note that defendant's counsel is trivializing the concept of contempt of court in treating it as a procedural device for obtaining an interim appeal. The role of contempt of court was long ago set out in *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450, 31 S. Ct. 492, 55 L. Ed. 797 (1911), where the U.S. Supreme Court stated:

> For while it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration whose judgments and decrees would be only advisory.

We turn to consideration of the sole matter before this court—the validity of the $50 fine for contempt. Contempt of court may be civil or criminal in nature and may be direct or constructive (indirect). As stated in *Gompers, supra*, 221 U.S. at 441:

> Contempts are neither wholly civil nor altogether criminal. And "it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both." [Citation omitted.] But in either event, and whether the proceedings be civil or criminal, there must be an allegation that in contempt of court the defendant has disobeyed the order, and a prayer that he be attached and punished therefor.

A civil contempt order is intended to compel a party to do some act for the benefit of another party to the action. *Eliker v. Eliker*, 206 Neb. 764, 295 N.W.2d 268 (1980). Such an order is not final because the defendant is in a position to mitigate the sentence through compliance with the court's order. Such orders are not appealable directly. *State ex rel. Kandt v. North Platte Baptist Church*, 225 Neb. 657, 407 N.W.2d 747 (1987). If

incarceration is ordered as a coercive sanction, the imprisonment can only be collaterally attacked by a habeas corpus action. *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984).

A criminal contempt sanction, however, is appealable. It is in the nature of a final order and is not subject to modification. *Liles, supra*. The criminal sanction is intended to preserve the power and dignity of the court for disobedience of its orders. *In re Contempt of Sileven*, 219 Neb. 34, 361 N.W.2d 189 (1985).

In this case, after the defendant was ordered to appear for genetic testing and defendant's attorney indicated that the defendant intended to refuse to obey that order, defendant's conduct was in the nature of a criminal contempt. The court initially stated it intended to make a coercive order of imprisonment. Defendant's counsel successfully resisted such an order, which could have been reviewed in an appropriate habeas corpus proceeding. As eventually entered, the court's order was a final order intended to vindicate the court's authority. The trial court did not set out any conditions which the defendant could satisfy to make the fine subject to mitigation. The $50 fine was not coercive in nature (indeed it is difficult to see how such a fine could be coercive in this day's economy) and operated as a final judgment. The order imposed an unconditional fine, which operated as punishment for the completed act of disobedience and did not allow the defendant to " 'carr[y] the keys of his prison in his own pocket.' " *Southern Railway Company v. Lanham*, 403 F.2d 119, 125 (5th Cir. 1968). *State ex rel. Kandt v. North Platte Baptist Church, supra*.

In this case, then, the $50 fine constituted the sanction in a criminal contempt. The statutes concerning contempt are set out in Neb. Rev. Stat. §§ 25-2121 to 25-2123 (Reissue 1985). Section 25-2122 provides: "Contempts committed in the presence of the court may be punished summarily; in other cases the party upon being brought before the court, shall be notified of the accusation against him, and have a reasonable time to make his defense."

In the case before us, it is clear that the contempt was not committed by the defendant "in the presence of the court."

Indeed, the record before us does not show that defendant was ever before the court. The record further does not show that defendant was ever brought before the court or notified of the accusation against him (by way of information as referred to in *Leeman v. Vocelka*, 149 Neb. 702, 32 N.W.2d 274 (1948), and *State ex rel. Beck v. Lush*, 168 Neb. 367, 95 N.W.2d 695 (1959); or by other means as used in *In re Contempt of Potter*, 207 Neb. 769, 301 N.W.2d 560 (1981)), nor was he given time to make his defense. *Muffly v. State*, 129 Neb. 334, 261 N.W. 560 (1935); *In re Contempt of Potter, supra*.

Further, there was no evidence of a willful criminal contempt of court committed by defendant. Defendant said or did nothing. His attorney said that defendant "respectfully" declined to obey. We particularly note that Neb. Ct. R. of Disc. 37(b)(2)(D) (rev. 1986) does not authorize, as a sanction, the filing of a contempt action in connection with "an order to submit to a physical or mental examination."

In short, the record before this court will not support a finding of criminal contempt of court committed by defendant. His conviction must be reversed.

Since the cause must be remanded and defendant has already accomplished a long delay, we feel it is appropriate to mention some matters apparent in the record before us. The petition herein is not positively verified, and indeed it might not be possible to positively verify all the allegations thereof. It would be appropriate for the trial court to have an evidentiary hearing to determine whether the factual allegations are supported by sworn testimony. In that connection, we note, but do not necessarily approve, language in *Bowerman v MacDonald*, 157 Mich. App. 368, 374, 403 N.W.2d 140, 143 (1987), where the court stated:

> Therefore, because a paternity case is only quasi-criminal, we decline defendant's invitation to use probable cause or reasonable grounds as the test. However, something more than filing a complaint alleging paternity is needed when the answer filed denies paternity. While we are not suggesting extensive proofs, at least sworn testimony by the complainant should be considered.

We also direct the parties' attention to our discovery rules.

Rule 37(b)(2) provides for various sanctions in discovery matters where a litigant refuses to respond to proper discovery motions. As an example, it is clear that entry of a default judgment would provide a final order that could be reviewed on appeal. See, also, *Taylor v. Illinois*, ＿＿ U.S. ＿＿, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988), approving other sanctions for the violation of a discovery order.

Each party is ordered to pay the costs incurred herein by that party.

REVERSED AND REMANDED.