KATHRYN JOAN JESSEN, APPELLEE, V.
TERRY LYNN JESSEN, APPELLANT.

567 N.W.2d 612

Filed July 29, 1997.    No. A-96-123.

James L. Zimmerman and Kristen D. Mickey, of Sorensen & Zimmerman, P.C., for appellant.

Jeffrey L. Hansen, of Simmons, Olsen, Ediger, Selzer, Ferguson & Carney, P.C., for appellee.

SIEVERS, MUES, and INBODY, Judges.

MUES, Judge.

## INTRODUCTION

Terry Lynn Jessen appeals from an order of the district court finding him in contempt of a hypothecation order and ordering him to pay a fine of $25,000 by February 28, 1996, but also providing that Terry may purge himself of said fine by returning $235,911.04 to the marital estate before this same date. Because we find that this is a civil contempt proceeding, the order presented for our review is not a final, appealable order and we must dismiss the appeal for lack of jurisdiction.

## STATEMENT OF CASE

In a divorce proceeding between Terry and Kathryn Joan Jessen, an order was entered on June 27, 1994, providing: "'Both parties shall be mutually restrained from transferring, encumbering, concealing, hypothecating, or in any [way] disposing of any property contrary to §42-857 [sic] R.R.S. 1943.'" On October 23, 1995, Kathryn filed a motion for citation in which she asserted that Terry was in violation of this order. An order to show cause was entered, and a hearing was held on December 8.

Several exhibits were introduced, and Terry testified at this hearing. Terry's answers and supplemental answers to interrogatories established that the balance of several accounts, including pension accounts, stock ownership accounts, and brokerage accounts, had decreased substantially since entry of the June 1994 order. Also admitted at this trial were relevant portions of Terry's deposition taken in October 1995, in which Terry stated that the money from these accounts had been spent gambling. Terry first estimated that he had lost in excess of $100,000 by gambling and later stated that his gambling losses were in the neighborhood of $200,000. Terry, however, adduced evidence at the hearing that $235,911.04 had been spent by him in part as follows: monthly living expenses from April through December 1995, child support, attorney fees, real estate taxes, and repayment of a $90,000 loan taken in December 1994 to a corporation belonging to Terry's father. Terry further testified that he had lost only approximately $45,000 gambling.

By order dated December 15, 1995, the district court found that Terry was in willful contempt of the court's June 1994

order and that Terry had expended $235,911.04 in violation thereof. The order provided that "[t]he respondent [Terry] is **ORDERED** to pay a fine of $25,000.00 herein by the date of February 28, 1996. Respondent may purge himself of said contempt by restitution of $235,911.04 back into identifiable martial [sic] property before February 28, 1996." The order further provided that such restitution was to be made from nonmarital property and required Terry to identify the source of such restitution funds. Terry timely appeals.

### ASSIGNMENTS OF ERROR
Restated, Terry asserts that the district court erred in (1) finding him in willful contempt of the hypothecation order and (2) imposing a punitive sanction in a civil contempt proceeding.

### STANDARD OF REVIEW
For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. *State ex rel. Fick v. Miller*, 252 Neb. 164, 560 N.W.2d 793 (1997); *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997). In the absence of a final order from which an appeal may be taken, the appeal must be dismissed for lack of jurisdiction. *State ex rel. Keener v. Graff*, 251 Neb. 571, 558 N.W.2d 538 (1997).

### DISCUSSION
At the outset, we must determine whether this court has jurisdiction to decide this appeal. There are two types of contempt proceedings, civil and criminal. Whereas the former give rise to coercive sanctions, the latter give rise to punitive sanctions. An order imposing civil, or coercive, sanctions is not a final, appealable order. *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991); *In re Contempt of Liles*, 216 Neb. 531, 344 N.W.2d 626 (1984). In the absence of a final order from which an appeal may be taken, the appeal must be dismissed for lack of jurisdiction. *Graff, supra.* On the other hand, punitive sanctions are reviewable by appeal. *Maddux, supra; In re Contempt of Liles, supra.* Thus, in order to determine whether this court has jurisdiction, we must determine the character of this contempt proceeding.

██ The character, nature, or purpose of a contempt proceeding is determined by the procedure used in a trial to determine whether there is contempt and the sanction imposed. *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994); *Dunning v. Tallman*, 244 Neb. 1, 504 N.W.2d 85 (1993). Although the district court characterized this proceeding as "criminal," the district court's characterization in this regard is not determinative. See, e.g., *Dunning, supra.*

██ Some general distinctions between civil and criminal contempt are necessary. A civil contempt order has the purpose of compelling one party to act for the benefit of another. *State ex rel. Collins v. Beister*, 227 Neb. 829, 420 N.W.2d 309 (1988); *In re Contempt of Liles, supra.* Such an order puts the contemnor in a position to mitigate the sentence by complying with the court's order. *Id.* In contrast, a criminal contempt order has the purpose of punishing a contemnor's past conduct in order to preserve the power and dignity of the court. *Id.* It is not subject to modification. *Id.* As stated in *In re Contempt of Liles*, 216 Neb. at 534, 344 N.W.2d at 628-29:

> In the coercive sanction . . . the contemner holds the keys to his jail cell, in that the sentence is conditioned upon his continued noncompliance. The punitive sanction is much like the sentence in a criminal case, in that it is absolute and not subject to mitigation if the contemner alters his future conduct toward the court . . . . The coercive sanction, on the other hand, is always subject to modification by the contemner's conduct . . . .

Despite the district court's characterization of these proceedings as "criminal," both parties contend that this case was brought and tried as a civil contempt proceeding, and we agree.

This action was instituted by Kathryn and filed as a part of the underlying civil action. It is evident that the primary purpose of the court's order was to benefit Kathryn by requiring Terry to return property to the marital estate equivalent to the amount which the court determined that Terry had removed in violation of the court's June 1994 order. " 'Where a party to an action fails to obey an order of the court, made for the benefit of the opposing party, the rule is well recognized that such act is, ordinarily, a mere civil contempt . . . .' " *McFarland v. State,*

165 Neb. 487, 491-92, 86 N.W.2d 182, 185 (1957). Although this action was brought and tried as a civil contempt action, the nature of the sanction imposed requires additional discussion.

Kathryn maintains that the $25,000 fine, as imposed, is a coercive sanction because Terry could avoid the fine by meeting the conditions set by the court. Thus, according to Kathryn, this is not a final order and this court lacks jurisdiction to decide this appeal. On the other hand, Terry argues that after February 28, 1996, the fine became punitive, as it was no longer subject to modification after said date. Terry correctly points out that a punitive sanction imposed in a civil contempt proceeding is invalid. See, e.g., *In re Contempt of Sileven*, 219 Neb. 34, 361 N.W.2d 189 (1985). This is so because " 'criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings.' " *Mine Workers v. Bagwell*, 512 U.S. 821, 826, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994). If Terry's argument is correct, then the contempt order at issue is appealable and must be reversed. See *id.* Terry also argues that the order at issue is void, as it is conditional because it does not operate in praesenti.

As previously set forth, the district court's order required Terry to pay a $25,000 fine by February 28, 1996, but provided that he could purge himself of this fine by returning $235,911.04 to the marital estate by that same date. According to Terry, after February 28 the fine is solely punitive because regardless of whether he complies with the court's restitution plan after February 28, he is still required to pay the $25,000 fine. Terry cites *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991), in support of his position.

*Maddux* involved a district court order which provided, " '[U]nless [Maddux] pays the amounts due he is sentenced to thirty (30) days in jail commencing April 1, 1989.' " 239 Neb. at 242, 475 N.W.2d at 528. The *Maddux* court reasoned that this order ceased to be coercive on April 1, 1989, as it was no longer subject to mitigation after that date. If the contemnor in *Maddux* did not comply with the court's purge plan before April 1, he was required to serve the 30-day sentence regardless of whether he complied with the plan after April 1. Since the contemnor in *Maddux* no longer held "the keys to his jail cell" after April 1,

the Nebraska Supreme Court found the sanction punitive in character. The *Maddux* court went on to find the order void, as it was a conditional order which did not perform in praesenti.

The *Maddux* order is distinguishable from the one in this case. Whereas the contemnor in *Maddux* was not immediately subject to his sanction, Terry is immediately required to pay the $25,000 fine unless he performs specific acts, i.e., reimbursing the marital estate. The fact that the language used in the order required Terry to pay the fine *by* February 28, 1996, does not change the immediate effect of the order. Had the order required Terry to pay the fine *on* February 28 unless he reimbursed the marital estate, we believe the *Maddux* rationale would be applicable and the order void as not operating in praesenti. Since it did not, we find that Terry's argument in this regard is without merit. Of course, that still does not answer the question of whether the sanction imposed is a proper coercive, civil sanction.

There are a variety of coercive sanctions a court may employ when finding a person in civil contempt. The most traditional of these involves the confinement of the contemnor for an indefinite period until he complies with an affirmative order of the court. *Mine Workers v. Bagwell*, 512 U.S. 821, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994). Similarly, the contemnor may be confined for a definite period so long as he is entitled to early release upon his performance of the affirmative act. *Id.*; *Shillitani v. United States*, 384 U.S. 364, 86 S. Ct. 1531, 16 L. Ed. 2d 622 (1966) (upholding as civil determinate 2-year sentence which included purge clause). "By contrast, a fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a 'completed act of disobedience,' . . . such that the contemnor cannot avoid or abbreviate the confinement through later compliance." *Bagwell*, 512 U.S. at 828-29.

Similarly, a fine is an appropriate sanction in a civil contempt proceeding so long as the contemnor may avoid the fine by complying with the court's order. *Id.* See, also, *Dunning v. Tallman*, 244 Neb. 1, 504 N.W.2d 85 (1993). In contrast, an unconditional fine is not an appropriate sanction in a civil contempt proceeding because the contemnor is unable to avoid the fine through his or her conduct. See, e.g., *Bagwell, supra*; *Dunning, supra*; *State ex rel. Collins v. Beister*, 227 Neb. 829,

420 N.W.2d 309 (1988) (unconditional $50 fine is sanction for criminal contempt). The extent to which a fine is a permissible coercive sanction was explained more specifically in *Bagwell, supra*:

> A close analogy to coercive imprisonment is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order. Like civil imprisonment, such fines exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged. Less comfortable is the analogy between coercive imprisonment and suspended, determinate fines.

512 U.S. at 829. The latter type of fine is, of course, that which we face here. Thus, the issue presented on appeal is whether a suspended, determinate fine is a proper sanction in a civil contempt proceeding.

In *United States v. Mine Workers*, 330 U.S. 258, 67 S. Ct. 677, 91 L. Ed. 884 (1947), the Court found that fixed fines may be proper coercive, civil sanctions when imposed and suspended pending future compliance with a court's order. Similarly, in *Penfield Co. v. S. E. C.*, 330 U.S. 585, 590, 67 S. Ct. 918, 91 L. Ed. 1117 (1947), the Court stated, "One who is fined, unless by a day certain he [does the act ordered], has it in his power to avoid any penalty."

Suspended, determinate fines have also been deemed proper in Nebraska. See, e.g., *Dunning, supra. Dunning* involved a court-approved property settlement agreement between a husband and wife which provided, among other things, that the wife would not compete with the husband's business for 2 years, or until November 22, 1990. The wife was subsequently found in contempt of the noncompetition agreement and fined $20,000. However, the district court in *Dunning* provided that the wife could purge herself of contempt and eliminate the fine by complying with the terms of the noncompetition agreement for an additional year, or until November 21, 1991. Thereafter, the wife advised the court that she rejected the purge plan, and the court entered an order making the $20,000 fine unconditional.

On appeal, the Nebraska Supreme Court separately addressed the issues of whether the district court had the authority to impose the $20,000 fine in a civil contempt proceeding

and whether the court had the authority to extend the noncompetition agreement. In discussing the first issue, the court stated that the sanction was not necessarily criminal in nature, since it could be avoided by the wife's compliance with the judicially extended noncompetition agreement. Therefore, the Supreme Court found that, assuming the district court had the authority to extend the noncompetition agreement for an additional year, the fine was a proper sanction in a civil contempt proceeding. Moreover, the court stated that the wife's decision not to comply with the court's order "did not necessarily transform an otherwise coercive civil sanction into a criminal penalty." *Id.* at 9, 504 N.W.2d at 92. In so finding, the *Dunning* court quoted *Hoffman, Etc. v. Beer Drivers & Salesmen's, Etc.*, 536 F.2d 1268, 1273 (9th Cir. 1976), which states:

> [I]nevitably, wherever a compliance fine is assessed and an opportunity given to purge, the failure to purge will bring about a due date. The due date occurs because the actor has failed to use the key to the jail which the court provided. [Citation omitted.] The occurrence of the due date does not transform civil proceedings, whose sole aim is to secure compliance, into a criminal proceeding. Were it otherwise, compliance with laws or orders could never be brought about by fines in civil contempt proceedings. Always the final order requiring payment will follow the act or omission which constitutes the failure to purge.

*Hoffman, Etc.* involved a temporary injunction and the court's finding that the respondents were in contempt thereof. In adjudicating the contempt, the court entered several orders, one of which, entered in November, assessed a $5,000 fine for past violations and a $1,000 fine for each future violation. The November order further provided that the fines could be avoided if the respondents complied with the terms of the temporary injunction and with certain posting and notice requirements. Because the November order assessed fines and suspended them on the condition that the contempt be purged, it was deemed an adjudication of civil contempt, interlocutory in character, from which no appeal was proper.

*Hoffman, Etc.* also involved a second court order, entered in March, which, based upon the foregoing $5,000/$1,000 fine

schedule, ordered that the amounts of $10,000 and $2,000 be paid within 30 days. Unlike the November order, the March order provided no means for purging the contempt. Thus, it was a final, appealable order. In response to the argument that the March order was criminal in nature rather than civil, the *Hoffman, Etc.* court explained that the March order did no more than apply the previously fixed fines to the violations it found. In essence, the March order was simply entered in support of the November order, which was clearly civil in nature.

Based on the foregoing, we conclude that the appeal in this case is premature because it is from a civil contempt order imposing a coercive fine. The order at issue merely assessed a fine and suspended it on the condition that the contempt be purged. Thus, it is like the November order in *Hoffman, Etc.* The district court has not yet entered an order like the March order in *Hoffman, Etc.*, applying the assessed $25,000 fine without any means to purge. Once the court has entered such an order, the $25,000 would be unconditional and the proper subject for an appeal. See, e.g., *Dunning v. Tallman*, 244 Neb. 1, 504 N.W.2d 85 (1993) (after wife notified court that she was rejecting purge plan, district court entered order making fine unconditional and such order was final and appealable). And as in *Dunning*, the fact that the $25,000 fine might be rendered unconditional as a result of Terry's decision not to comply with the order to reimburse the marital estate does not have the effect of transforming this otherwise coercive, civil sanction into a criminal penalty. See, also, *N. L. R. B. v. Blevins Popcorn Co.*, 659 F.2d 1173 (D.C. Cir. 1981) (imposition of threatened penalty if contemnor does not comply with purge plan does not convert civil contempt proceeding into criminal proceeding); *Hoffman, Etc., supra.*

Since *Dunning, supra,* and *Hoffman, Etc., supra,* the U.S. Supreme Court decided *United Mine Workers v. Bagwell*, 512 U.S. 821, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994), in which the Court acknowledged the difficulties in parsing civil and criminal contempt proceedings. It pointed out that "[m]ost contempt sanctions, like most criminal punishments, to some extent punish a prior offense as well as coerce an offender's future obedience." 512 U.S. at 828. That Court also noted that it had

not addressed the issue of civil contempt fines since *United States v. Mine Workers*, 330 U.S. 258, 67 S. Ct. 677, 91 L. Ed. 884 (1947) (fixed suspendable fines may be proper coercive sanctions). At issue in *Bagwell* was what procedural protections were due before a particular contempt penalty could be imposed.

In *Bagwell*, a union was enjoined from conducting unlawful strike-related activities against certain companies. The union was subsequently found in contempt and fined for its disobedience. In that contempt proceeding, the trial court also announced that the union would be fined $100,000 for any future violent breach of the injunction and $20,000 for any future nonviolent infraction. As a result, the union was thereafter ordered to pay fines totaling over $64 million in what the trial court deemed coercive, civil sanctions. Of these fines, $12 million was ordered payable to the companies and $52 million payable to the Commonwealth of Virginia and two of its counties. Subsequently, the companies and the union agreed to vacate the contempt fines, and the $52 million payable to the state and counties was the subject on appeal. The Virginia Supreme Court upheld the fines as civil and coercive in nature. The U.S. Supreme Court disagreed, finding that the fines were criminal and punitive in nature.

In reaching its decision, the Court focused on the extreme amount of the fines, the complexity of the injunction involved, and the intensive factfinding required in the contempt proceeding. It observed that the trial court's pronouncement that fines would be imposed for future contempt, without more, was insufficient to establish their coercive nature. The Court stated, "The fines are not coercive day fines, or even suspended fines, but are more closely analogous to fixed, determinate, retrospective criminal fines which petitioners had no opportunity to purge once imposed." 512 U.S. at 837. We read this language to be the Court's observation that the trial court's order in *Bagwell* focused on future acts of the union and that while it gave the union an opportunity to *avoid* the fines by compliance with the injunction, it gave the union no opportunity to *purge* itself of said fines once a violation was found to have occurred. On the contrary, once the union had performed the prohibited acts, the

fines were set. The *Bagwell* Court stated that the mere fact that the fines were announced in advance was insufficient to make them coercive.

The Court in *Bagwell* also noted that other factors of the case required a finding that the fines were criminal in nature, including the complexity of the contumacious conduct involved, that is, the nature of the conduct and the length of time the union acted contumaciously, and the seriousness of the fines. In essence, the *Bagwell* Court found that when the sanction involved is sufficiently serious and the factfinding intensive, as it was in that case, the contemnor is entitled to certain due process rights, including, in that case, a trial by jury. It specifically distinguished *United States v. Mine Workers, supra*, on the basis that in that case the union was given an opportunity, after the fine was imposed, to avoid the fine by effecting full compliance with the injunction and that full compliance in that case involved only three affirmative acts.

Further, the *Bagwell* Court stated:

> Certain indirect contempts nevertheless are appropriate for imposition through civil proceedings. Contempts such as failure to comply with document discovery, for example, while occurring outside the court's presence, impede the court's ability to adjudicate the proceedings before it and thus touch upon the core justification for the contempt power. . . . Similarly, indirect contempts involving discrete, readily ascertainable acts, such as turning over a key or payment of a judgment, properly may be adjudicated through civil proceedings since the need for extensive, impartial factfinding is less pressing.
>
> For a discrete category of indirect contempts, however, civil procedural protections may be insufficient. Contempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding.

512 U.S. at 833-34. The Court went on, however, to state that even when the contempt involved is like that of *Bagwell*, a court need not conduct a criminal contempt proceeding so long as the fine imposed is petty. The court did not place a dollar amount on "petty."

Based on the facts of this case, we do not believe *Bagwell* requires a different result. Terry's contempt involved a discrete, readily ascertainable act, and the order he was found to have violated was not complex. While a $25,000 fine is a substantial amount, based upon the amount of money apparently involved in this marital estate, the district court likely found that a substantial amount was necessary to get Terry's attention. After it had concluded that Terry wrongfully removed over $200,000 from the marital estate, imposition of a $25,000 fine with purge conditions was justified.

Terry's last contention, raised for the first time at oral argument, also warrants a brief discussion. If we understand Terry correctly, he claims that he was denied the right to make an accounting of unusual expenditures as a result of his being found in violation of the June 1994 order and that therefore the proceeding below was flawed. Even were we to ignore that Terry failed to assign this alleged flaw as error on appeal, the argument is without merit. The June order, which Terry was found in contempt of, prohibited Terry from disposing of marital property except in the usual course of business or for the necessaries of life. Neb. Rev. Stat. § 42-357 (Reissue 1993), the statute authorizing the order, provides in relevant part: "[T]he party against whom such order is directed shall *upon order of the court* account for all unusual expenditures made after such order is served upon him or her . . . ." (Emphasis supplied.)

While seeking an order compelling an accounting was certainly one remedy available to Kathryn, we do not read § 42-357 to limit the remedy for violation of an order entered pursuant to that section solely to an accounting. This case was tried below as a contempt proceeding without objection from either party. Pursuant to that procedure, a show cause order was entered and a hearing held at which both Terry and Kathryn adduced evidence relevant to the issue of Terry's willful violation of the June 1994 order. Cases are heard in the state appellate courts on the theory upon which they were tried. *Sunrise Country Manor v. Neb. Dept. of Soc. Servs.*, 246 Neb. 726, 523 N.W.2d 499 (1994). Moreover, Terry adduced evidence in response to the show cause order specifying what his expenditures had been for. Thus, whether specifically ordered to or not,

he was given an opportunity to account, and that is precisely what he attempted to do at the hearing to show cause. This argument is meritless.

In conclusion, this is a civil contempt proceeding imposing an in praesenti coercive sanction. Therefore, it is not a final, appealable order, and this court lacks jurisdiction over it. We are therefore without jurisdiction to address Terry's first assigned error.

## CONCLUSION

A civil contempt order is not a final, appealable order. Therefore, the matter is dismissed for lack of jurisdiction.

APPEAL DISMISSED.