Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/02/2024 09:08 AM CST

Michael Zeiler, appellee, v. Kenneth E. Reifschneider,
Trustee of the Kenneth E. Reifschneider
Living Trust, appellant.

___ N.W.2d ___

Filed February 2, 2024.    No. S-23-329.

1. **Standing: Jurisdiction: Parties.** Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute presents a question of law.
2. **Judgments.** A judgment's meaning is determined, as a matter of law, by the contents of the judgment in question.
3. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
4. **Actions: Parties: Standing.** A party has standing to invoke a court's jurisdiction if it has a legal or equitable right, title, or interest in the subject matter of the controversy.

Appeal from the District Court for Scotts Bluff County: Leo P. Dobrovolny, Judge. Vacated and dismissed.

Steven W. Olsen and Adam A. Hoesing, of Simmons Olsen Law Firm, P.C., L.L.O., for appellant.

Tylor J. Petitt, of Shapiro Riha Law, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

For over three decades, two Scotts Bluff County families, the Zeilers and the Reifschneiders, have disputed their

respective rights to divert water from neighboring tracts of farmland. In the latest chapter of the saga, Michael Zeiler filed a contempt action against Kenneth E. Reifschneider on the theory that Reifschneider had willfully violated a consent judgment that was entered in 1988 in a lawsuit involving Reifschneider and Zeiler's father. After a bench trial, the district court concluded that Reifschneider had willfully violated the consent judgment by raising the elevation level along the boundary line of his property, causing water to pool on the neighboring land farmed by Zeiler. In this appeal filed by Reifschneider, we conclude that the consent judgment conferred no obligations on Reifschneider and thus, Zeiler lacked standing to pursue the contempt action. Accordingly, we vacate the judgment that found Reifschneider in contempt and dismiss the appeal.

## BACKGROUND

*Parties and Properties.*

This dispute concerns neighboring tracts of farmland in Scotts Bluff County that share a boundary line running east and west. At all relevant times, the Zeiler family leased and farmed the northern tract (the Zeiler property) and the Reifschneider family owned the southern tract (the Reifschneider property).

Members of the Zeiler family have leased the Zeiler property from another family for over a century. The property was leased on an annual basis under oral crop-share agreements. In the 1980s, the Zeiler property was leased and farmed by Zeiler's father. Sometime between now and then, it came to be leased and farmed by Zeiler.

Reifschneider farmed the Reifschneider property for a number of years after purchasing the land from his father. In the 1980s, Reifschneider's son farmed the land with Reifschneider. In the 1990s, Reifschneider began leasing the Reifschneider property to tenants, who then farmed the land. At some point, the Reifschneider property was placed in a trust. Reifschneider is the trustee of that trust, and his son is the successor trustee.

Because the land in the area slopes from north to south, surface water tends to flow from the Zeiler property toward the Reifschneider property.

*Consent Judgment.*

In 1988, the district court entered a consent judgment in a lawsuit involving Zeiler's father and Reifschneider. The lawsuit was filed by Reifschneider, his wife, and two other individuals with the same surname, although the record in this appeal does not explain their exact relationship to Reifschneider or the Reifschneider property. The sole defendant in the lawsuit was Zeiler's father, who, at that time, was leasing and farming the Zeiler property.

The parties take somewhat different positions as to what prompted the litigation that culminated in the consent judgment. There is no dispute, however, as to what the consent judgment provides. In the consent judgment, the district court ordered as follows:

1. By April 15, 1988, Defendant Zeiler shall remove the dike located [on the properties' boundary line] and level the area to a uniform elevation of 39.5 as referenced in [an attached document] to allow for the drainage of surface waters in a diffused manner in which they are normally wont to flow from [the Zeiler property] to the [Reifschneider property]. Defendant Zeiler shall make no other alterations in the drainage patterns on [the Zeiler property] which change the flow patterns or which increase the volume or velocity of surface waters to the extent that such changes or increases would be injurious to Plaintiffs Reifschneider.

2. Defendant Zeiler shall, in no event, permit any waste or run-off irrigation water to drain onto Plaintiffs Reifschneiders' lands.

3. Nothing herein shall prohibit Defendant Zeiler from erecting and maintaining a dike along the Eastern boundary of [the Zeiler property], nor shall

Plaintiffs Reifschneider be prohibited from erecting on [the Reifschneider property] any drainage improvements, including dikes; provided that any such alterations or improvements by Defendant Zeiler or Plaintiffs Reifschneider shall not otherwise be prohibited by law.

4. All claims for damages raised in the pleadings herein are hereby dismissed with prejudice.

5. Each party to this action shall bear their own costs and a complete record is hereby waived.

6. This agreement shall be binding upon the parties and [the owner of the Zeiler property], and their respective heirs and assigns.

IT IS SO ORDERED.

*Actions of Parties Following*
*Consent Judgment.*

After the consent judgment was entered, Zeiler's father removed the dike and leveled the boundary line between the properties as specified by the consent judgment. Sometime later, the Reifschneiders began to move dirt just south of the boundary line, constructing what the parties have referred to alternatively as a "dike," "berm," or "road" along the boundary of the two properties.

According to Zeiler, rainwater would back up against the structure the Reifschneiders erected and flood back on the Zeiler property. Displeased with this development, Zeiler used heavy equipment to make indentations or cuts in the structure the Reifschneiders had built. This, according to the Reifschneiders, caused water to flow on the Reifschneider property in an uneven fashion, and so the Reifschneiders continued this back-and-forth by building up the structure along the boundary line even more. According to Zeiler, the structure eventually became so substantial that he could no longer cut through it. Zeiler contends that the structure continues to cause rainwater to pool on his property and damage his crops.

*Contempt Action in District Court.*

In 2018, Zeiler filed this contempt action in district court. He named Reifschneider as the defendant in his capacity as the trustee of the Kenneth E. Reifschneider Living Trust. Zeiler alleged that Reifschneider had willfully violated the consent judgment by building up the structure along the properties' boundary line. The district court held a bench trial, after which it first entered an order concluding that Zeiler had standing and subsequently entered a judgment styled as a "Journal Entry/Order" finding that Reifschneider had willfully violated the consent judgment.

In its order concerning standing, the district court reasoned that Zeiler, as the lessee of land adversely affected by the structure erected by the Reifschneiders, had a sufficient interest to confer standing. The district court did not expressly consider whether the fact that Zeiler was not a party to the litigation in which the consent judgment was entered had bearing on his standing to sue for contempt.

In its judgment finding Reifschneider in contempt, the district court concluded that the consent judgment imposed obligations on both Zeiler and Reifschneider. It concluded that the consent judgment imposed an obligation on both parties "not to interrupt the free flow of diffused surface waters across the boundary." The district court also reasoned that "[i]t would be an absurd interpretation" of the consent judgment "to bar [Zeiler] from altering the elevation above [the specified level], yet allow [Reifschneider to] raise the elevation above [the specified level], when the clear purpose of the [consent judgment] was to keep the water moving through this area in a diffused manner." The district court concluded that Reifschneider willfully violated these requirements by building the structure along the boundary.

As a remedy for Reifschneider's contempt, the district court ordered Reifschneider to remove any structures along the boundary that were higher than the elevation specified in the consent judgment by a specified date. The district court

added that Reifschneider would be assessed a fine of $500 for every day he failed to comply with the district court's remedy.

Reifschneider filed a timely appeal.

## ASSIGNMENTS OF ERROR

Reifschneider assigns three errors. We paraphrase those assignments as follows: The district court erred (1) by finding that Zeiler had standing, (2) by finding that Reifschneider willfully violated the consent judgment, and (3) by failing to limit itself to the four corners of the consent judgment in determining its meaning.

## STANDARD OF REVIEW

[1] Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute presents a question of law. *In re Application A-19594, ante* p. 311, 995 N.W.2d 655 (2023).

[2] A judgment's meaning is determined, as a matter of law, by the contents of the judgment in question. *Ramaekers v. Creighton University*, 312 Neb. 248, 978 N.W.2d 298 (2022).

[3] An appellate court independently reviews questions of law decided by a lower court. *Noland v. Yost, ante* p. 568, 998 N.W.2d 57 (2023).

## ANALYSIS

[4] We begin our analysis, as we must, with the jurisdictional question of whether Zeiler had standing to seek to hold Reifschneider in contempt for violating the consent judgment. Generally, a party has standing to invoke a court's jurisdiction if it has a legal or equitable right, title, or interest in the subject matter of the controversy. *In re Application A-19594, supra*.

The district court appeared to conclude that because Zeiler would benefit from an order requiring Reifschneider to lower the elevation at the properties' boundary line, he had the

requisite legal or equitable interest in the matter to have standing. But the district court did not consider that Zeiler sought to have Reifschneider held in contempt for violating a consent judgment from a case in which Zeiler was not a party. We have previously explained that an action for civil contempt is "instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled." *McFarland v. State*, 165 Neb. 487, 491, 86 N.W.2d 182, 185 (1957). Because Zeiler was not a party to the suit in which the consent judgment was entered, it is not immediately apparent that he has rights or interests in the consent judgment that would be subject to protection in a contempt proceeding.

In response to the foregoing, Zeiler points to paragraph 6 of the consent judgment and its language providing that the consent judgment shall be binding upon the parties and "their respective heirs and assigns." Zeiler appears to contend that this language extends all the benefits and obligations of the consent judgment to the original parties' "respective heirs and assigns." And, according to Zeiler, because his father was a party to the consent judgment, he qualifies as one of the parties' "heirs." On this basis, Zeiler understands himself to be an intended beneficiary of the consent judgment and entitled to enforce it via contempt.

A number of courts have recognized that intended third-party beneficiaries of consent judgments and consent decrees have standing to enforce them. See, e.g., *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 958 (8th Cir. 2002); *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280 (D.C. Cir. 1993). This rule is based on the quasi-contractual nature of consent judgments and consent decrees, and the "fundamental principle of contract law that parties to a contract may create enforceable contract rights in a third party beneficiary." *Beckett, supra*, 995 F.2d at 286. See *Hook v. State of Ariz. Dept. of Corrections*, 972 F.2d 1012, 1014 (9th Cir. 1992)

("enforcement of consent decrees is governed by the established contract principle that non-parties as intended third party beneficiaries, may enforce an agreement"). See, also, *McArthur v. Thompson*, 140 Neb. 408, 419, 299 N.W.2d 519, 524 (1941) (characterizing consent decree as "in the nature of a solemn contract").

Accordingly, to assess whether Zeiler has standing to pursue this contempt action, we find it appropriate to consider whether Zeiler was an intended beneficiary of the consent judgment. We have said that to enforce a contract as a third-party beneficiary, "it must appear by express stipulation or by reasonable intendment that the rights and interest of such unnamed parties were contemplated and that provision was being made for them." See *Podraza v. New Century Physicians of Neb.*, 280 Neb. 678, 686, 789 N.W.2d 260, 267 (2010).

As we turn to consider whether the consent judgment can be interpreted to make Zeiler a third-party beneficiary, we could begin our analysis by focusing on paragraph 6 of the consent judgment; Reifschneider disagrees that Zeiler, as a mere lessee of the property, qualifies as an "heir." Ultimately, however, we find it unnecessary to consider the parties' respective interpretations of paragraph 6. We believe there is a more fundamental barrier to any contention that Zeiler is an intended beneficiary of the consent judgment: Unlike Zeiler and the district court, we do not interpret the consent judgment to impose any enforceable obligations on Reifschneider. We explain our reasoning below.

Zeiler reads paragraphs 1 and 3 of the consent judgment to impose obligations on Reifschneider. Zeiler points to language at the end of the first sentence of paragraph 1 and contends that it prohibits Reifschneider from taking any action that would prevent "the drainage of surface waters in a diffused manner in which they are normally wont to flow" from the Zeiler property to the Reifschneider property. Zeiler, however, fails to read the entire sentence in which that language appears. As quoted above, paragraph 1 of the consent

judgment required *Zeiler's father* to remove the dike "to allow for the drainage of surface waters in a diffused manner in which they are normally wont to flow." No language in paragraph 1 requires Reifschneider to do anything or prohibits him from doing anything.

Zeiler also reads isolated language in paragraph 3 of the consent judgment to impose obligations on Reifschneider. Here, Zeiler points to the language at the end of that paragraph that states that "any such alterations or improvements by Defendant Zeiler or Plaintiffs Reifschneider shall not otherwise be prohibited by law." He argues that this language prohibits Reifschneider from making any alteration or improvement along the boundary line that would be unlawful. Again, however, the language must be read in the context of the entire paragraph. Paragraph 3 provides that the consent judgment should not be read to prohibit the Reifschneiders or Zeiler from taking certain, specified actions so long as those actions are not "prohibited by law." The language at the end of paragraph 3 thus defines the scope of what Zeiler and the Reifschneiders were expressly permitted to do; it does not impose an enforceable obligation itself.

Our decision to interpret the judgment in this manner is informed by the language of paragraph 3, but also the general recognition that it is inappropriate for a judgment or decree to do nothing more than enjoin a party to follow the law. See, e.g., *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008) ("[i]njunctions that merely instruct the enjoined party not to violate a statute generally are overbroad, increasing the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful") (internal quotation marks omitted); *Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) ("[i]t is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible"); *Daniels v. Woodbury County, Iowa*, 742 F.2d 1128, 1134 (8th Cir. 1984) ("an injunction which does little or nothing more than

order the defendants to obey the law is not specific enough"); *Davison v. Plowman*, 247 F. Supp. 3d 767, 783 (E.D. Va. 2017) ("injunctions that simply require their subjects to follow the law are generally overbroad"). See, also, *Brady v. State*, 965 P.2d 1, 17 (Alaska 1998) (observing, in response to request for injunction ordering party to follow law, that party "is already obliged to do so").

Unable to find that the language of the consent judgment imposed obligations on Reifschneider, we next address the district court's finding of obligations based on its understanding of the consent judgment's purposes. Recall that the district court found that the purpose of the consent judgment was to allow water to move from the Zeiler property to the Reifschneider property in a diffused manner and that it would be "an absurd interpretation" of the consent judgment if Zeiler were prohibited from raising the elevation of the boundary line above the specified level but Reifschneider was not. We cannot endorse the district court's reasoning.

First of all, to the extent the district court concluded that Reifschneider was bound to comply with unstated purposes of the consent judgment, as opposed to obligations set forth expressly, that runs counter to how we have said judgments should be interpreted. We have said that unless the language used in a judgment is ambiguous, the effect of the judgment must be declared in the light of the literal meaning of the language used. *Ramaekers v. Creighton University*, 312 Neb. 248, 978 N.W.2d 298 (2022). The district court did not identify any language in the consent judgment that was ambiguous, and neither can we identify any such language. There is thus no basis for considering anything other than the literal meaning of the consent judgment's language.

The fact that this was a consent judgment also, in our view, undercuts the district court's conclusion that it would be absurd to interpret the consent judgment to impose obligations on Zeiler's father, but not on Reifschneider. Several decades ago, the U.S. Supreme Court cautioned against

attempts to identify the purported purposes of consent decrees and explained that consent decrees must be understood as the product of compromise. The following quote is lengthy, but because we believe it makes important observations, we reprint it in full:

> Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.

*United States v. Armour & Co.*, 402 U.S. 673, 681-82, 91 S. Ct. 1752, 29 L. Ed. 2d 256 (1971) (emphasis omitted).

When the consent judgment in this case is properly understood as a compromise conclusion to the earlier litigation between the Reifschneider parties and Zeiler's father, it is not surprising, much less absurd, that the consent judgment would impose obligations on Zeiler's father, but not on the Reifschneiders. The Reifschneider parties were the plaintiffs in the lawsuit that ended with the consent judgment, and the consent judgment resulted in the dismissal of that lawsuit. Lawsuits often conclude with the defendant providing consideration in exchange for nothing more than the plaintiff's dismissal of suit.

We are aware that our conclusion that the consent judgment did not impose obligations on Reifschneider overlaps to some degree with the merits of Zeiler's contempt action. We find, however, that this is an instance in which the merits and standing overlap. See, e.g., *Hall v. Associated Intern. Ins. Co.*, No. 11-CV-4013-JTM/DJW, 2011 WL 3299104 at *3 (D. Kan. Aug. 1, 2011) ("when a plaintiff pursues a third-party beneficiary claim, his standing, as well as his claim, are dependent upon a showing that a certain provision of the contract operated to his benefit"). Because we do not interpret the consent judgment to impose any enforceable obligations on Reifschneider, we see no way to conclude that Zeiler is an intended beneficiary of the consent judgment. And if Zeiler is neither a party to nor an intended beneficiary of the consent judgment, we discern no basis to determine that he had standing to pursue the contempt action.

Because Zeiler lacked standing to pursue the contempt action, the district court lacked jurisdiction to consider it and we must vacate its judgment that held Reifschneider in contempt. We caution that our decision determines only that Zeiler lacks standing to pursue a contempt action; we make no evaluation of whether Zeiler would have standing, or could obtain relief against Reifschneider, via a different legal theory.

## CONCLUSION

Because we find that Zeiler lacked standing to pursue this contempt action, we vacate the judgment of contempt entered by the district court and dismiss the appeal.

VACATED AND DISMISSED.